## UNITED STATES v. FAY.

District Court, D. Idaho, S. D.	May 17, 1927.

No. 1488.

1. **Witnesses** ⊜⟹350—Exclusion of question whether government witness had previously been convicted of crime held not error under Idaho statute (Comp. St. Idaho 1919, § 8038).

In prosecution in Idaho for violation of National Prohibition Act (U. S. Comp. St. § 10138¼ et seq.), exclusion of defendant's cross-examination of government witness as to whether or not he had been convicted of crime in Utah about a year before *held* not error, in view of Comp. St. Idaho 1919, § 8038, under which inquiry should have been limited to conviction for felony.

2. **Courts** ⊜⟹349—Rule of evidence, limiting inquiry as to prior convictions, prevailing under territorial and state law, will be enforced by federal courts.

A rule of evidence, limiting inquiry as to prior convictions, prevailing in a territory at the time it comes into the Union, and continuing to date of trial, is one which federal courts will adopt.

3. **Witnesses** ⊜⟹350—Under Idaho statute, witness' credibility may be tested by inquiry as to prior convictions for felony; questioner being bound by reply, unless record produced (Comp. St. Idaho 1919, § 8038).

Under Comp. St. Idaho 1919, § 8038, a witness may be asked on cross-examination, for the purpose of affecting his credibility, whether he has been convicted of a felony, and questioner is bound by reply, unless record of conviction is produced.

4. **Criminal law** ⊜⟹775(3), 815(5)—Instruction on defense of alibi held not objectionable, as failing to disclose which of seven counts it related to, or as foreclosing other defenses.

In prosecution under indictment in seven counts for violation of National Prohibition Act (Comp. St. § 10138¼ et seq.) instruction, "The defense in this case is what is known in law as an alibi; that is, that the defendant was not present at the time and place of the commission of the offense charged in the information, if such an offense has been committed, * * *" *held* not erroneous, as containing no suggestion as to which offense was referred to, or as foreclosing all defenses excepting that of alibi, particularly in view of evidence.

James T. Fay was convicted of violating the National Prohibition Act, and he moves for a new trial. Motion denied.

H. E. Ray, U. S. Atty., and Sam S. Griffin, Asst. U. S. Atty., both of Boise, Idaho.

J. P. Pope and Morgan & Smith, all of Boise, Idaho, for defendant.

CAVANAH, District Judge. The defendant was proceeded against by information, charging him in seven counts with violations

of the National Prohibition Act (Comp. St. § 10138¼ et seq.). A trial was had, and the jury returned a verdict of guilty on four counts, and a disagreement on three. Sentence to imprisonment in the county jail of Cassia county and a fine of $400 was then pronounced. On March 22, 1927, the defendant moved for a new trial, and the matter is now presented on his petition therefor.

[1] The assignments of error on the motion present for consideration two questions: Whether the court erred in sustaining the government's objection to the question propounded by counsel for the defendant on cross-examination of the witness Jeppson, wherein he was asked if he was not convicted of a crime in Utah about a year ago. The court announced at the time of its ruling that the inquiry should be limited to the conviction of a felony.

On July 3, 1890, the date of the admission into the Union of Idaho territory, it was not proper to show that a witness was convicted of a crime other than a felony. The statute then provided:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony." Rev. Stats. Idaho 1887, § 6082.

[2] This statute has existed in Idaho ever since. Comp. Stats. Idaho 1919, § 8038. The rule of evidence prevailing in a territory at the time it comes into the Union and continuing until the trial, limiting the inquiry to a felony, is the one that the federal courts adopt. In the case of Louie Ding v. U. S. (C. C. A.) 247 F. 12 (9th Circuit), the court said: "We are of the opinion that the exclusion of the offered witness was erroneous, in that the court should not have determined the competency of the witness by the rules of the common law as in force in the respective original states of the Union when the Judiciary Act of 1789 [1 Stat. 73] was passed, but should have applied the rules which governed the competency of witnesses and the admissibility of evidence in force within the territory of Washington when that territory was admitted to the Union." Neal v. U. S. (C. C. A.) 1 F.(2d) 637.

It would seem that under all of the authorities the inquiry must be limited to the purpose of affecting the credibility of the witness, and such purpose should be stated at the time

the question is asked. We do not find here any purpose of the inquiry being announced at the time the question was asked. Attention is called by the defendant to the case of Merrill v. U. S. (C. C. A.) 6 F.(2d) 120, in support of this assignment of error. That was a case which arose and was tried in the state of Oregon, and defendant was asked upon cross-examination, for the purpose of affecting his credibility as a witness, whether he had been convicted of a misdemeanor for violating the liquor laws of the state some thirteen years before. The court stated:

"In some jurisdictions, the proof is limited to the conviction of crimes such as would disqualify the witness at common law; in others, the crime must rise to the dignity of a felony, while in still others the rule extends to crimes of every degree, except perhaps the violation of municipal ordinances. The latter rule has prevailed in the state of Oregon from a very early day. State v. Bacon, 13 Or. 143 [9 P. 393, 57 Am. Rep. 8]. Such proof, when admitted, should be strictly limited to the single purpose for which it is admitted; but there was in this case no request to limit the consideration of the testimony to any particular purpose, either at the time of its admission or in the general charge of the court."

See, also, Mitrovich v. U. S. (C. C. A.) 15 F.(2d) 163.

It seems clear that the decision is based upon the thought that the court had in mind the rule of evidence prevailing in the state of Oregon at the time it came into the Union, as the court says that the rule extending the evidence to crimes of every degree has prevailed in the state of Oregon from a very early day, and cites a decision of that state, recognizing that to be the doctrine in the state of Oregon.

The case of Smith v. United States (C. C. A.) 10 F.(2d) 787, relied upon by the defendant, was where the prosecution was permitted by the trial court in rebuttal to prove by two witnesses that the accused had on other occasions been engaged in the business of selling narcotics, which was held to be error. The court there, in using the expression, "To impeach his testimony he might properly have been asked whether he had been convicted of a crime, and, if he denied that he had been convicted, it would have been permissible to produce the record in rebuttal," did not have before it the question here as to whether the rule of evidence prevailing in the territory at the time of its admission into the Union should be adopted.

[3] My conclusion as to the first assignment of error is that a witness may be asked on

cross-examination, for the honest purpose of affecting his credibility, whether he has been convicted of a felony, and the questioner is bound by the reply, unless the record of conviction is produced.

[4] The defendant in his second assignment of error challenges the correctness of the instruction given to the jury to the effect that the defense interposed was an alibi. It is contended that, while there were seven counts in the information, no suggestion is made in the instruction as to which offense reference is made by the expression that "the commission of the offense charged in the information" used therein, and further that the expression "the defense in this case is what is known in law as an alibi," limited the defense to an alibi defense, and by it the minds of the jurors were directed away from all the evidence that no offense at all was committed. And it is further objected that the instruction, if applicable to the theory of the defense of an alibi, should have stated that to constitute an alibi the evidence should show that the defendant was so far from the place where the crime was alleged to have been committed that it was impossible for him to have participated in it. These objections call for a consideration of the form of the instruction, together with the other instructions given and the evidence offered by the defendant. The instruction is as follows:

"The defense in this case is what is known in law as an 'alibi'; that is, that the defendant was not present at the time and place of the commission of the offense charged in the information, if such offense has been committed, but he was at that time at another and different place. As to this defense, it is not necessary for the defendant to prove an alibi to your satisfaction, beyond a reasonable doubt, nor by a preponderance of the testimony; but if, after a full and fair consideration of all the facts and circumstances in evidence, you entertain a reasonable doubt as to whether or not the defendant was present at the time and place of the commission of the offense charged in the information, if such offense has been committed by any one, it will be your duty to give the defendant the benefit of such doubt and acquit him; but if you believe from all of the evidence and circumstances in this case beyond a reasonable doubt that the plea of an alibi was not interposed in good faith or that the evidence to sustain it was false and fraudulent, then this is a discrediting circumstance to which you may look in connection with all the other evidence in determining the guilt or innocence of the defendant."

It will first be observed that, as the jury in their verdict disagreed upon the three counts relating to the charges occurring on October 1, 1926, no contention is made on the motion that the instruction could have prejudiced the defendant as to those charges, and therefore the consideration as to the proper application of the instruction will be as to the counts relating to the 14th and 16th days of September, 1926. At the time of the trial I was impressed from the theory of the defense as presented by counsel for the defendant, together with my remembrance of the testimony, that the defendant claimed he was not present at his place of business on any of the three occasions claimed by the government where the sales of liquor took place, as it was strenuously argued to the jury that he was elsewhere, and it was impossible for him to have made the sales of liquor as charged, and for that reason I felt that the defendant was entitled to the instruction given, so that the jury would be advised that should they find, as claimed by the defendant, that he was not present at the times and place where it was charged by the government witnesses he sold the liquor, they should acquit him.

As to the objection as to the form of the instruction containing the reference, "The commission of the offense charged in the information," I feel that it is fair to say that the jury understood that it referred to all of the counts, for, if the defense of an alibi was interposed, they, after hearing the remaining instructions, wherein they were told: "In considering the issues in this case, you will bear in mind the general principles of law, applicable in the trial of all criminal cases. The defendant is presumed to be innocent of the charges upon which he is being tried, and the burden is not upon him to establish his innocence, but upon the government to prove his guilt. This presumption is in the nature and has the weight of evidence, and protects the defendant throughout the trial, and will be considered by you, together with all other evidence in this case as you deliberate upon your verdict; also the further principle that, before you can find one guilty upon a criminal charge, the evidence must be such as to convince you beyond a reasonable doubt. A mere preponderance of the evidence is not sufficient. So in this case, if, after you have fairly considered all the evidence, you can conscientiously say to yourselves that you are fully convinced, that you have such an abiding conviction of guilt as you would be willing to act upon in the most important affairs of your own lives, in that case you would not have a reasonable doubt and it would be your duty

to convict. If, upon the other hand, after such consideration you cannot candidly say that you have such abiding conviction of guilt, then you would have a reasonable doubt and it would be your duty to acquit"—understood that it referred to all of the counts.

The remaining objection, that "the defense in this case is what is known in law as an alibi" limited the defense to an alibi defense calls for a review of the language used in the instruction, together with the other instructions given and the evidence introduced by the defendant. The instruction required the jury to first find that an offense had been committed by some one, as it is stated therein: "If such offense has been committed by any one." This language is repeated in the instruction. Then, in the closing part of the instruction, it is further stated that the jury should take into consideration "all other evidence in determining the guilt or innocence of the defendant." It would seem clear that, after considering the phrase used in the instruction in question, "if such offense has been committed by any one," the language used as to the defense being an alibi was qualified in requiring the jury to first find that the offense had been committed.

Reading, then, this qualification with the other instructions, requiring the jury to first find that the defendant beyond a reasonable doubt committed the offense, or any of them, as charged in the information, I am unable to conclude from the instructions that the jury was not permitted to pass upon all of the evidence, and first find whether or not any of the offenses charged were committed by any one. This would seem to meet the objection that the jury was deprived of considering the testimony of Mrs. Fay to the effect that no liquor was sold at the defendant's place of business on any of the occasions in question to the government witnesses. Furthermore, the record discloses that at the time the instruction was given the defendant entered no exception to the form of the instruction not stating correctly the law as to what constitutes an alibi, as the exception noted went only to the application of it to the evidence.

Applying the instruction to the evidence introduced by the defendant, which it is claimed relates to the defense, we find that the witnesses consisted of himself, his wife, sister, and Mrs. Marston. The government's two witnesses, Barney and Jeppson, testified that the defendant, about 4 o'clock in the afternoon of September 14, and about 11 or 12 o'clock on the morning of September 16, 1926, at his place of business in Burley, Idaho, made the sales of liquor now in question to them. The defendant, in answering such testimony, testified that his place of business was on the corner of Fifth and Oakley streets, one block north of the Elks' Club, and one block west and one block north of the National Hotel, in Burley, Idaho; that his wife takes care of and conducts the business, as he goes around garages and attends auction sales; that the Cassia County Fair commenced in Burley on September 14th, and he was chairman of the Elks' athletic committee, putting on and caring for boxing bouts to be held in the basement of the National Hotel, which was to commence on the 14th of September; that he was very busy making all the necessary preparations for these bouts; that he did not go into his place of business at all on that date, but that he went home about 4 or 5 o'clock in the afternoon to change clothes and get ready for the evening. Further he states in response to a question propounded to him by his counsel: "Q. Directing your attention to the hour of 11 or 12 o'clock on the 16th of September, were you in your building? A. No. Q. This place of business? A. No."

Mrs. Fay testified that she attended to the business generally, and her husband looked after the buying on the outside, and bringing the articles purchased in; that she was at their place of business all of the days of the 14th and 16th of September; that the County Fair commenced on September 14th, and continued for three days. The question was asked by defendant's counsel: "Q. You say that on the 14th, on account of the boxing contest he was interested in on behalf of the Elks' Charity Fund, he was not about the place of business you recall at all? A. No. Q. Do you have any recollection of his activities on the 16th, the last day of the fair? A. I do. Q. What was he doing? A. Fay left along in the morning. He had to go and collect up tickets he had put out and check out the cash balances for them. Q. And was he about the place of business at all? A. No, sir. Not during the fair at all."

She further stated, in answer to the question asked by defendant's counsel, concerning the sale testified to by the Government's witnesses on the 16th of September, and where she was at: "Q. Where were you about that time? A. In the building. Q. In charge of the business? A. Yes. Q. Was your husband there at all at that time? A. No, sir." Further on cross-examination she states, after referring to the defendant attending to business: "Q. On the 14th or 16th? A. I know nothing was done on the 14th or 16th, because

Fay was busy with the boxing contest. Q. He didn't visit the garages on those three days? A. Not that I know of. Q. Didn't tell you anything about it if he did? A. No; it wasn't brought up. Q. Spent all his time, the 14th, 15th, and 16th, at the boxing contest business and was never at the shop? A. No, sir; he wasn't at the shop."

The witness Agnes Holden, the sister of defendant, who was visiting him in Burley, and was at his home, was then called and testified, on direct examination, as follows: "Q. I will ask you particularly to recall, if you can, the first day of that fair—I understand it was the 14th of September; do you remember that? A. Yes; I do. Q. Do you remember what your brother, the defendant here, was doing—in what way he was occupied particularly—on that day? A. As near as I can recall, he left home about 8 and was gone all day to my knowledge, working in behalf of the Elks' Charity Fund business—something in behalf of that; he was going to put on a wrestling bout or something; I don't understand that; and that was what he was doing— fixing seats and the stage and things like that, getting lumber and getting tickets ready, and that sort of thing. Q. Do you know how he was dressed? A. Yes; I do. Overalls, brown shirt, and cap. Q. Inviting your attention to the next two days this fair was going on, which would be the 15th and 16th—what was Fay doing? A. He was always busy, so far as I know. He would leave in the forenoons, and I wouldn't see him again until late in the afternoon. He would take his lunch down town. I did the cooking while I was there, and we only had one principal meal, and that was in the evening about 6 o'clock, when Fay would come home. Q. On the occasions, particularly about the 14th, 15th, and 16th of September, he was attending to the fair business during those three days? A. Yes."

On cross-examination she testified, "Q. And on the 14th, what did you say Fay was doing? A. I said he was getting ready to put on a boxing contest, to take place in behalf of the Elks' Charity Fund. He was away all the time. I recall he left early in the morning, and I didn't see him until evening."

Mrs. Marston testified with reference to having a conversation, about the 18th or 19th of September, with Jeppson relating to her having a list of names upon which that of defendant appeared.

I gather from the evidence offered by the defendant, and am forced to the conclusion therefrom, that the defendant's claim and defense was that he was not present on the 14th and 16th days of September at his place of business where the government claims he sold the liquor to them. If this evidence was competent, and there seems to be no dispute as to that, it conveyed to the jury the only idea that the defendant claimed he was not present and could not have committed the offenses charged. The claim of being absent from the place at the time it is charged that the offenses were committed by the defendant is nothing more nor less than an alibi. Otherwise the evidence should not have been admitted. The purpose of offering this evidence was to show to the jury that the defendant was not present at his place of business on either of these two dates, and therefore no offense, as testified to by the government witnesses, could have taken place. It was the natural thing for Mrs. Fay to say, after testifying that the defendant was not present, that no liquor was sold there to the government witnesses, because she says that she was the only one there in charge of the place, and no claim was made by the government that she had committed any offense.

For the reasons stated, I do not think that the contention of the defendant is sustained by the record, and the motion for new trial will be denied.