## COULSTON v. UNITED STATES.
### No. 397.

Circuit Court of Appeals, Tenth Circuit.
June 29, 1931.

James H. Mathers, of Oklahoma City, Okl. (J. Q. A. Harrod, Laynie Harrod, and James C. Mathers, all of Oklahoma City, Okl., on the brief), for appellant.

Herbert K. Hyde, Asst. U. S. Atty., of Oklahoma City, Okl. (Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The appellant was convicted of violating the Anti-Narcotic Acts (title 21, U. S. C., c. 6 [21 USCA § 171 et seq.]; title 26, U. S. C., c. 11 [26 USCA § 691 et seq.]). The government's evidence was that defendant and one Mathews were partners engaged in selling morphine; that defendant furnished the morphine and Mathews did the selling; that an addict arranged with defendant to make a purchase from Mathews; and that the morphine was delivered by Mathews in the presence of defendant. The defendant took the stand and denied the partnership, admitted he was present when Mathews made the delivery, but disclaimed any knowledge of what was going on.

Several errors are assigned. It is claimed that a demurrer to the government's evidence should have been sustained. Aside from the fact that the point was waived by the introduction of evidence and the failure to move for a directed verdict at the close of all the evidence, the claim is frivolous. It is claimed that error was committed because the trial court commented on the evidence, counsel asserting the law to be that "the trial court is not permitted to convey, in the slightest manner, to the jury any indication whatsoever as to the weight, force, effect or truthfulness of any evidence. And should he do so through inadvertence or otherwise, it is reversible error." That is not, and never has been, the law in the national courts. On the contrary, the trial judge has the right to analyze and classify with fairness the evidence on both sides, and otherwise aid the jury in its consideration; and as long as he makes it clear that the jury has the exclusive right to decide the facts, he may comment on the weight of the evidence, although he should not argue the case. Complaint is made because the stenographer did not report all of the proceedings of the trial, including arguments of counsel. Trials are not officially reported in the national courts; if either party desires a stenographic report as an aid in the preparation of the bill of exceptions, or of his assignments of error, or for any reason, he has the absolute right to have a stenographer present for that purpose; but the responsibility is upon the parties to provide themselves with such a record. A stenographic report, while helpful, is not indispensable in the settlement of a bill of exceptions.

The record discloses that, on cross-examination of the defendant, the court permitted, over objection, an inquiry into a controversy between defendant and the narcotic agent, involving the return of $25 supposedly paid the defendant in connection with a transaction involving morphine and which occurred some thirteen months after the offense for which he was on trial. The record further discloses that on rebuttal the government was permitted to prove, over objection, its version of such subsequent transaction, and to prove a further conversation between the agent and defendant over $1,750 worth of morphine. Neither of the transactions proven on rebuttal had the slightest connection with the sale for which defendant was being tried.

In our judgment, this was prejudicial error. The issue presented was a simple one: Did defendant negotiate the sale on January 20, 1929, as testified to by two government witnesses, or was he an innocent bystander, as he testified. These remote and disconnected transactions had no evidentiary bearing on this issue; at best they could serve but to create an atmosphere of hostility and to distract the attention of the jury from the issue. The briefs indicate a confusion of thought upon two entirely different evidentiary principles—one the admissibility of proof of other offenses; the other, the impeachment of the defendant as a witness if he takes the stand.

In the civil law, and very early in the common law, evidence of other crimes was admitted on the theory that a person who has committed one crime is apt to commit another. The inference is so slight, the unfairness to the defendant so manifest, the difficulty and delay attendant upon trying several cases at one time so great, and the confusion of the jury so likely, that for more than two hundred years it has been the rule that evidence of other crimes is not admissible. Boyd v. United States, 142 U. S. 450, 12 S. Ct. 292, 35 L. Ed. 1077; Hall v. United States, 150 U. S. 76, 14 S. Ct. 22, 37 L. Ed. 1003; Niederluecke v. United States (C. C. A. 8) 21 F.(2d) 511; Cucchia v. United States (C. C. A. 5) 17 F.(2d) 86; Smith v. United States (C. C. A. 9) 10 F.(2d) 787; Wigmore on Evidence (2d Ed.) § 194. Corpus Juris cites cases from forty-four American jurisdictions in support of this rule. 16 C. J. 586. There are many exceptions to the rule, the most common of which is that, if the prosecution must show a specific intent, evidence of other similar offenses may be used to establish that fact. For example, in a prosecution for a scheme to defraud, the existence of the crime depends upon the proof of fraudulent intent; and many times the proof of that intent is found in the "evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment." Wood v. United States, 41 U. S. (16 Pet.) 342, 360, 10 L. Ed. 987; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163. 52 L. Ed. 278; Wigmore on Evidence (2d Ed.) §§ 300–373; 16 C. J. 589.[1] All of the

[1] The exceptions are classified in many ways but in all of them, the evidence of the other offenses either has probative value, or, as in Astwood v. United States (C. C. A. 8) 1 F.(2d) 639, St. Clair v. United States, 154 U. S. 134, 14 S. Ct. 1002, 38 L. Ed. 936, and Jones v. United States (C. C. A. 9) 179 F. 584, the several offenses are so interwoven that proof of one necessarily involves proof of the other. In State v. King, 111 Kan. 140, 206 P. 883, 22 A. L. R.

many so-called exceptions to the general rule of exclusion can be covered by stating the rule negatively; that is, relevant and competent evidence of guilt is not rendered inadmissible because it also proves that defendant committed another offense. Moore v. United States, 150 U. S. 57, 61, 14 S. Ct. 26, 37 L. Ed. 996; Tucker v. United States (C. C. A. 6) 224 F. 833; Hogan v. United States (C. C. A. 5) 48 F.(2d) 516; Miller v. United States (C. C. A. 9) 47 F.(2d) 120. Or, to use the language of Justice Brewer, "A party cannot, by multiplying his crimes, diminish the volume of competent testimony against him." State v. Adams, 20 Kan. 311, 319.

■ The government was not obligated to show any specific intent in the case at bar. In Paris v. United States (C. C. A. 8) 260 F. 529, the defendants were charged with a violation of the Anti-Narcotic Act, and the cause was reversed because evidence of other violations of the act was admitted, the court holding that "the intent of the defendants, or either of them, was not an essential element of the offense with which they were charged in the case at bar." The evidence offered by the government in this case had no probative bearing on the guilt of the defendant, and should have been excluded.

■ If the defendant takes the witness stand, a different rule comes into play. He steps out of his character as a defendant, for the moment, and takes on the role of a witness, and as such becomes subject to cross-examination in the same manner and to the same extent as any other witness. The rules of evidence in criminal cases may not, in the same jurisdiction, be the same as the evidentiary rules in civil cases, sections 858 and 914 of the Revised Statutes (title 28, U. S. C. §§ 631, 724 [28 USCA §§ 631, 724]) having no application to criminal cases. In criminal cases, the competency of witnesses is determined by the common law of the jurisdiction as it existed when the state was admitted into the Union [Neal v. United States (C. C. A. 8) 1 F.(2d) 637, and cases there cited; United States v. Fay (D. C.) 19 F.(2d) 620; Id. (C. C. A. 9) 22 F.(2d) 740; Rendleman

v. United States (C. C. A. 9) 18 F.(2d) 27; Zoline on Fed. Crim. Law and Procedure, vol. 1, § 300, page 248], subject to such changes as may be brought about by judicial authority or congressional enactment [Rosen v. United States, 245 U. S. 467, 38 S. Ct. 148, 62 L. Ed. 406; Neal v. United States, supra; Tinsley v. United States (C. C. A. 8) 43 F.(2d) 890]. In criminal cases, there may therefore be differences arising from variations in the common law in the different jurisdictions at the time of their admission into the Union. It may however be said that, subject to possible variants so arising, it is well settled in criminal cases in the federal courts that cross-examination must be confined to the subjects of the direct examination [Philadelphia & Trenton R. R. Co. v. Stimpson, 39 U. S. [14 Pet.] 448, 10 L. Ed. 535; Sawyer v. United States, 202 U. S. 150, 26 S. Ct. 575, 50 L. Ed. 972, 6 Ann. Cas. 269; McKnight v. United States (C. C. A. 6) 122 F. 926; Resurrection Gold Mining Co. v. Fortune Gold Mining Co. (C. C. A. 8) 129 F. 668; Harrold v. Oklahoma (C. C. A. 8) 169 F. 47, 17 Ann. Cas. 868; Illinois Central R. R. Co. v. Nelson (C. C. A. 8) 212 F. 69; Hendrey v. United States (C. C. A. 6) 233 F. 5; Heard v. United States (C. C. A. 8) 255 F. 829; Zoline on Fed. Crim. Law and Procedure, vol. 1, § 385, page 317]; that the credibility of a defendant who has testified may be impeached in the same manner and to the same extent as any other witness, and no further [Raffel v. United States, 271 U. S. 494, 46 S. Ct. 566, 70 L. Ed. 1054; Fitzpatrick v. United States, 178 U. S. 304, 315, 20 S. Ct. 944, 44 L. Ed. 1078; Reagan v. United States, 157 U. S. 301, 305, 15 S. Ct. 610, 39 L. Ed. 709; Madden v. United States (C. C. A. 9) 20 F.(2d) 289; Tucker v. United States (C. C. A. 8) 5 F.(2d) 818]; questions asked on cross-examination for the purposes of impeachment should be confined to acts or conduct which reflect upon his integrity or truthfulness, or so "pertain to his personal turpitude, such as to indicate such moral depravity or degeneracy on his part as would likely render him insensible to the obligations of an oath to speak the truth" [Miller v. Territory of Oklahoma (C. C. A. 8) 149 F. 330, 338, 9 Ann. Cas. 389];[2] when such

1006, are gathered many interesting cases, where the crime was committed in such a peculiar manner that proof that defendant committed other offenses in the same unusual way was held to be admissible to establish the identity of the perpetrator. It has also been held that, where the defendant concedes the doing of the act complained of, but claims that he did it accidentally or by mistake, evidence of other similar offenses, not too remote in time, may be admitted to rebut the defense and to establish general criminal intent. Marshall v. United States (C. C. A. 2) 197 F. 511. For a discussion of exceptions to the rule, see 16 C. J. 587 et seq.

[2] The authorities are widely divergent as to the specific acts or conduct which is a proper subject of such inquiry. Wigmore devotes 28 pages to a citation of cases on this subject. Wigmore on Evidence (2d Ed.) vol. 2, pp. 385 to 412. The rule herein stated is the rule of the Eighth circuit, and concerning which Dean Wigmore says, at page 365: "The other attitude is entirely logical, and admits only *such misconduct as indicates a lack of veracity,*—fraud, forgery, perjury, and the like. A mi-

a question is asked and answered, the inquiry is ended; the government is bound by the answer in that it may not, on rebuttal, offer countervailing proof [Fisk v. United States (C. C. A. 6) 279 F. 12; Bullard v. United States (C. C. A. 4) 245 F. 837; Smith v. United States (C. C. A. 9) 10 F.(2d) 787, 788]. To this latter rule, there is one exception: In criminal cases a witness may be asked, for purposes of impeachment, whether he has been convicted of a felony, infamous crime, petit larceny, or a crime involving moral turpitude, and on rebuttal the record of such conviction is admissible. Middleton v. United States (C. C. A. 8) 49 F.(2d) 538; Glover v. United States (C. C. A. 8) 147 F. 426, 8 Ann. Cas. 1184; Williams v. United States (C. C. A. 5) 46 F.(2d) 731; Pittman v. United States (C. C. A. 8) 42 F.(2d) 793; Lawrence v. United States (C. C. A. 8) 18 F. (2d) 407; Haussener v. United States (C. C. A. 8) 4 F.(2d) 884; Williams v. United States (C. C. A. 8) 3 F.(2d) 129, 41 A. L. R. 328; Neal v. United States (C. C. A. 8) 1 F.(2d) 637; Scaffidi v. United States (C. C. A. 1) 37 F.(2d) 203.[3] A witness may not be asked if he has been accused or arrested for a crime, for the sufficient reason that it calls for hearsay evidence, and because accusation carries no implication of guilt. Glover v. United States (C. C. A. 8) 147 F. 426, 430, 8 Ann. Cas. 1184; Pittman v. United States (C. C. A. 8) 42 F.(2d) 793; State v. Greenburg, 59 Kan. 404, 53 P. 61.[4]

Tested by these rules, the questions asked on cross-examination of the defendant were improper. That a controversy occurred,

nority of courts are inclined to observe this limitation,—at least now and then."

[3] There is a divergence of authority as to the nature of the crime which may be proven for the purpose of impeachment. Judge Morris, in the Scaffidi Case (C. C. A.) 37 F.(2d) 203, analyzes the decisions of all the circuits which had passed upon the question by 1930. The rule stated in the opinion is that of the Eighth circuit and is supported by the weight of authority. The trial court has a discretion in allowing cross-examination as to such convictions, and the questions should not be permitted unless the court is satisfied that they are asked in good faith and on substantial information —ordinarily only when the record proof of such conviction is available. See elaborate opinion of Judge Kenyon in Williams v. United States (C. C. A.) 3 F.(2d) 129, 41 A. L. R. 328.

[4] There is a conflict of authority in the state courts upon the question of whether the credibility of a witness may be attacked by a showing that he has been accused, arrested, or indicted for an offense; or, if such an attack is permissible, whether it is confined to offenses growing out of the transaction then on trial. For a discussion of this conflict, see 28 R. C. L. p. 627. The rule stated in the opinion is the rule in the Eighth circuit, is supported by the weight of authority, and seems to be sound as a matter of principle. See Wigmore on Evidence (2d Ed.) vol. 2, p. 366.

some thirteen months after the sale charged, between a narcotic agent and the defendant over the repayment of $25, or that at an unnamed date the two of them had a conversation concerning other morphine, did not impeach the credibility of the witness. But, even if the cross-examination were proper, the evidence received was not admissible on rebuttal to contradict defendant, for it concerns a collateral matter as to which inquiry stopped with the answers of the witness. The government states in its brief that the defendant, on direct examination, testified that he knew nothing about the morphine business. The record does not substantiate this statement.

One other point is stressed. From the brief of appellant, purporting to quote the testimony verbatim, it appears that the narcotic agent was asked whether he "had information that morphine was being sold by this defendant at the Sun Drug Store," and that his answer was received over objection. The record, by which we must go, does not disclose either objection or exception. Since the case must be retried, it may be said that such information is not competent evidence of guilt; the defense of entrapment not being interposed, it is not available to rebut such defense.

To all of this, the appellee answers that the jury convicted upon abundant evidence, and that the errors complained of were not prejudicial. The same contention was made to the Eighth Circuit Court of Appeals many years ago, and in response thereto that court (Sanborn, Van Devanter, and Philips sitting) said: "The zeal, unrestrained by legal barriers, of some prosecuting attorneys, tempts them to an insistence upon the admission of incompetent evidence, or getting before the jury some extraneous fact supposed to be helpful in securing a verdict of guilty, where they have prestige enough to induce the trial court to give them latitude. When the error is exposed on appeal, it is met by the stereotyped argument that it is not apparent it in any wise influenced the minds of the jury. The reply the law makes to such suggestion is: that, after injecting it into the case to influence the jury, the prosecutor ought not to be heard to say, after he has secured a conviction, it was harmless. As the appellate court has not insight into the deliberations of the jury room, the presumption is to be indulged, in favor of the liberty of the citizen, that whatever the prosecutor, against the protest of the defendant, has laid before the jury, helped to make up the weight

of the prosecution which resulted in the verdict of guilty." Miller v. Territory of Oklahoma, 149 F. 330, 339, 9 Ann. Cas. 389.

The case will be reversed and remanded for a new trial.

Reversed and remanded.