ESTATE OF JAMES E. FRIZZELL, DECEASED, ROY BURNS, E. A. JACKSON AND MARY GEORGE FRIZZELL, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6704. Promulgated November 28, 1947.

*Joseph B. Brennan, Esq.*, for the petitioners.
*Bernard D. Hathcock, Esq.*, for the respondent.

HARRON, *Judge*: The first issue presented is whether the transfer of stock to a trust in October 1937 was made in contemplation of death within the meaning of section 811 (c) of the Internal Revenue Code. The respondent, on brief, does not contend that the transfer in trust comes within the scope of section 811 (d). It is understood that he has abandoned the view that section 811 (d) applies. The gift was not made within two years prior to the death of the decedent.

The respondent contends that the donor's dominant motive in creating the trust was to make such provision for his incompetent son that he would be cared for after the father's death; and that the gift was testamentary in character and a substitute for a testamentary disposition of property.

The controlling principles which are to be considered were set forth in *United States* v. *Wells*, 283 U. S. 102. In each case it is necessary to scrutinize the circumstances surrounding the gift "to detect the dominant motive of the donor in the light of his bodily and mental condition." The chief purpose of the statutory provision "is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." Whether or not the gift was made in contemplation of death "is always to be found in motive." The problem is, therefore, to ascertain the controlling motive which prompted decedent's gift to the 1937 trust.

One of the reasons for the respondent's determination was that he understood that the decedent was in ill health when he made the gift and had been in ill health during a period of prior years. The evidence is substantial that the decedent had not been ill before the date of the gift. The evidence shows that the decedent was in good health for a man of his years. The evidence relating to the physical condition and mental attitude of the decedent at the time he created the trust amounts to a neutral factor in deciding the issue.

The reason the trust was created was to provide an income for life for an incompetent son. The question must be decided by the considerations which the condition of the son make apparent. He was in good health and 40 years old. His financial needs were limited. He could not use or manage property or money himself. His unfortunate condition was such that his needs were that of a 12-year old person,

and would remain at that level for the rest of his life, devoid of the prospect of the larger needs which come as a person grows to maturity and takes on the responsibilities and develops the capacities of an adult. The record indicates that as long as either parent lived the son would live in the home of his parents. They were able to provide the small amount of money required for his maintenance while he lived at home. The decedent possessed a considerable amount of assets and income. As long as he lived, the childlike son would be amply cared for. The situation was such that the son would require guarantees of care and support only after the decedent's death. See *City Bank Farmers Trust Co.* v. *McGowan*, 323 U. S. 594.

The stock transferred in trust was productive of annual dividends of $3,000 per year or more. During the two years and ten months during which the decedent lived after he created the trust, the trustee paid $50 a month to the son's mother. The record does not show any need for making such payments, which were nominal. During the three months of 1937, and the years of 1938 and 1939, the trustee received income totaling $13,867 (the trust income for 1940 is not shown), and he paid a total of $1,750 to the son's mother during the entire period, including 1940, up to the death of the decedent. The trust income, for the most part, was being accumulated during the remainder of the grantor's life.

The decedent set aside a substantial part of his assets in the trust for William, about one-fifth of his estate.[1] Where a gift of a substantial amount of property is made by transfer before death to a child who is not in need, "the act itself is evidence tending to support the conclusion that the gift was made in contemplation of death." *Updike* v. *Commissioner*, 88 Fed. (2d) 807, 811.

It was said in *Igleheart* v. *Commissioner*, 77 Fed. (2d) 704, 709 "A gift is to be regarded as made in contemplation of death where the dominant motive of the donor is to make proper provision of the donee after the death of the donor." In this case, there is testimony that the trust was created so that the son would be provided for "if he were left alone in the world." The decedent had not made any separate provision for the son's care and support prior to the creation of the trust in 1937, and no provision was made for him in the decedent's will. There is a strong inference that the decedent recognized that the time was approaching, because of his advanced age, when he should make the necessary arrangements through which the son would be provided for after the death of the decedent. When, finally, the decedent created the trust he set aside a substantial part of his assets,

---

[1] The value of the trust stock at the date of gift was $133,859. The gross estate of the decedent at the time of his death was $442,348, according to the estate tax return, which included securities of $414,829, so that it appears that the decedent transferred to the trust in 1937 about one-fifth of his estate.

large enough to provide for the son for the remainder of his life without the necessity of making any additional provisions for the son in the decedent's will. Thus, it is evident that the transfer of a large block of stock to the trust was an advancement out of the decedent's estate to the son. See *Wilfley* v. *Hellmuth*, 56 Fed. (2d) 845. Also, it is evident that, if the decedent had not created a trust for his son during his life, he would have made the same provision in his will under which a trust would have been established.

We recognize that advanced age, in itself, does not furnish the test of whether the controlling motive of the donor in making a gift was associated with thoughts of death, *United States* v. *Wells, supra; Rochester H. Rogers, Executor,* 21 B. T. A. 1124. However, the age of the donor is an important fact and, if circumstances show that the donor must have had in mind realization that his remaining years were to be few because he had attained old age and that there was some relationship between thoughts of age and the decision to make the gift, then considerable weight must be given the fact of advanced age.

Upon consideration of all of the evidence, we think the evidence shows the following: (1) That the son's needs in 1937 and during the remainder of the decedent's life would have been amply satisfied by the parents without resort to any trust fund, and that the decedent must have considered in 1937 that the trust was to provide for the son's needs after the settlor's death. (2) That the decedent did not create the trust in 1937 to be relieved of responsibilities during his lifetime, nor to equalize any gifts among his children according to any plan of making his children independent, nor to meet any special need of the son in 1937. (3) That the dominant motive in creating the trust was not related to purposes associated with life. *United States* v. *Wells, supra.*

It is concluded that the dominant motive of the decedent in creating the trust was to establish an instrumentality which would supply the funds for the son's needs for life after the death of the decedent and would be in lieu of a testamentary trust under his will, and that the transfer of property in trust was a substitute for a testamentary disposition of part of the donor's estate. It is held that the trust was created in contemplation of death within the meaning of section 811 (c).

Petitioners rely upon *Griffith* v. *United States,* 32 Fed. Supp. 884. It is our view that the facts and the circumstances of this case require reaching a different conclusion. See *Estate of Millie Langley Wright,* 43 B. T. A. 551, 554, where it was said with reference to the motive for the making of gifts to two daughters: "But this condition is shown to have been of long standing and no effort is made to account

for the bestowal * * * at that particular time." The same observation is pertinent here.

*Issue 2.*—Upon the holding that the decedent created the trust for his son in contemplation of death and as a substitute for a testamentary disposition, a second question arises, which relates to the measure of the resulting estate tax. That is to say, the problem is to determine the value of "property" to be included in the gross estate for purpose of measuring the estate tax. Respondent included the value of the trust corpus at the date of death, which consisted of the original corpus, the gift stock of the Coca-Cola Co., plus increases in the corpus resulting from investment of undistributed income, and cash not yet invested. The petitioners contend that the value of only part of the trust is includible in the gross estate, namely, the value of the Coca-Cola stock. The amount of the difference in value involved in the respective contentions of the parties is about $11,228.

The question presented is one of first impression, relating as it does to a transfer in trust which was made in contemplation of death but was completed in every respect when the *inter vivos* transfer was made, and was not one in which the decedent retained any interests in the property transferred. In the *Igleheart* case, it appeared in the findings of fact made by the Board of Tax Appeals that reinvestments of trust corpus had been made by the trustee between the date of transfer and the date of death, but that fact was not discussed by the Circuit Court in *Igleheart* v. *Commissioner*, *supra*, and, although the Circuit Court sustained the Board's holding that the value of all of the assets of the trust at the date of death should be included in the gross estate, there was no issue raised, as is raised here, on the point that the value of the trust assets to be included in the gross estate should be limited to the value at the date of death of the property transferred in trust by the grantor, the decedent. Also, in this case, the question does not relate to reinvestments by the trustee of proceeds from the original property transferred by the grantor-decedent to a trust in contemplation of death, nor to accretions to the very property which the grantor-decedent transferred to the trust during his lifetime. We are unable to find, and neither party has cited, any authority which has considered the precise question presented in this case. Petitioners cite no authorities to support their contention and confine their argument on brief to reliance upon the literal wording of section 811 (c).[2]

Under the holding in issue 1, the shares of Coca-Cola stock are

---

[2] The argument of petitioners is as follows:

"* * * Respondent has included in gross estate not only the value of the particular property transferred by decedent, namely, 1132 shares of Coca Cola Company Common stock, but also cash and securities representing accumulated income derived from such stock after the date of the transfer. * * * It is submitted that where property is includible in gross estate as having been transferred under circumstances described in

property to be included in the gross estate for computing the tax upon the estate. Except for petitioners' position under issue 1, as it carries over to this issue, there is no real dispute with respect to this conclusion. Thus the question which is in dispute relates primarily to the other property which made up the trust corpus at the date of death, and the question is whether such other property is includible in the gross estate under the holding that the transfer in trust at the time the trust was created was made in contemplation of death under section 811 (c).

Section 811 (c) extends to transfers taking effect at death, but the transfer of property made by this decedent does not fall under the second broad category of section 811 (c). The trust instrument under which this trust was created did not evidence any retention of interest in the decedent from which it could be held that his death operated to end any probabilities or contingencies upon the happening of which any interests in any of the property of the trust would become certain. This trust is distinguishable from the trusts in the cases of *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, 324 U. S. 108, and *Commissioner* v. *Field*, 324 U. S. 113, where it was held that "the retention of such a string * * *, subjected the value of the entire corpus to estate tax liability." *Fidelity-Philadelphia Trust Co.* v. *Rothensies, supra.* Here, the gift of the decedent to the trust was completed in every respect during his lifetime and was not affected by his death. Only the testamentary character of the motive of the decedent in making the gift sweeps it into his estate under the first broad category of section 811 (c) relating to transfers made in contemplation of death. The phrase "in contemplation of death," used in the statute, which governs the present case, "embraces gifts *inter vivos*, despite the fact that they are fully executed, are irrevocable and indefeasible." *United States* v. *Wells, supra.*[3] But we do not per-

Section 811 (c) or (d) I. R. C., only the value of the particular property transferred may be included, and the statute does not authorize the inclusion of income derived from the transferred property subsequent to the transfer and prior to the death of the decedent. * * *

"The only property with respect to which the decedent made a transfer to the trust of October 14, 1937, was the 1132 shares of Coca Cola stock which was [*sic*] still held in the trust at the date of death. Even if the value of that stock should be included in gross estate under Section 811 (c) or (d), which of course we deny, there would be absolutely no basis for including the other securities and cash held in the trust at the date of death."

[3] *United States* v. *Wells*, 283 U. S. 102:

"* * * The statutory description embraces gifts inter vivos, despite the fact that they are fully executed, are irrevocable and indefeasible. The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. *Nichols* v. *Coolidge*, 274 U. S. 531, 542 ; *Milliken* v. *United States*, 283 U. S. 15, decided March 2, 1931. As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive. * * *"

ceive that the motive, contemplation of death, of the gift in trust of one property sweeps into the gross estate other property which is found in the trust at the date of death which is derived from the operation of the trustee, independently of the grantor, in his discretionary accumulation of income and the investment thereof in new property.

The estate tax is a tax on a transfer; it is not a tax on property. *United States Trust Co. of New York* v. *Helvering*, 307 U. S. 57; *Chase National Bank* v. *United States*, 278 U. S. 327, 334; *Central Hanover Bank Co.* v. *Kelly*, 319 U. S. 94; *Milliken* v. *United States*, 283 U. S. 15, 20, 22, 23. Although in the instance of property transferred in contemplation of death all interests have been completely determined upon the making of the *inter vivos* transfer and the property does not technically pass at death, the statute (section 811 (c)), for purposes of the estate tax, puts the property transferred in contemplation of death in "the same category as it would have been if the transfer had not been made and the transferred property had continued to be owned by the decedent up to the time of his death." *Igleheart* v. *Commissioner, supra.* It was stated in *Helvering* v. *Hallock*, 309 U. S. 106: "Section 302 (c) deals with property not technically passing at death but with interests theretofore created. *The taxable event is the transfer inter vivos. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment.*" (Italics supplied.) This rule is, in our opinion, the decisive consideration in the question before us. Value at the time of death provides the measure of the tax, but the tax is upon a transfer of property. *Helvering* v. *Hallock, supra.* Therefore, we think that where *transfer* of property has been completed during life and the death of the grantor does not operate upon the completion of the transfer, the estate tax is measured by the value of the property which the decedent transferred to a trust, only, and the tax is not measured by other property in the trust when death occurs. The fact that transfers are made in *trust* may constitute one common element in both a transfer in contemplation of death and a transfer taking effect at death. In both, a trust holds property at the time of death which is to provide the measure of the estate tax, but the differences in law between the two classes of transfers dictate the differences in the measure of the tax. Perceiving this to be the underlying distinction in section 811 (c) for purposes of determining gross estate, it follows here that the "property" to be included in decedent's gross estate is only the value at the date of death of the Coca-Cola stock of which the decedent made transfer during his life, rather than the value of the entire trust corpus, as respondent has determined.

The conclusion above reached is not in conflict with the holding in *Estate of Daniel Guggenheim*, 40 B. T. A. 181, 182, 183 (modified and

affirmed, 117 Fed. (2d) 499; certiorari denied, 314 U. S. 621). In the *Guggenheim* case the entire trust corpus was included in the decedent's gross estate because of the reserved powers retained up to the time of his death, a different situation than we have here, where the decedent retained no interest in nor control over the property which he transferred in trust.

Respondent has not presented any extended argument in support of his position under this issue and he, like petitioner, cites no authorities in support of his view other than a reference to *Maas* v. *Higgins*, 312 U. S. 443, a case which we consider lacking in sufficient closeness to the situation in this case. Nor does respondent cite his regulation, section 81.15 of Regulations 105, at page 45, where it is provided that "If the transferee has made additions to the property, or betterments, the enhanced value of the property due thereto should not be included." We have examined the pertinent section of Regulations 105 in our consideration of this question, but can not find anything which represents an administrative interpretation of section 811 (c) as it applies to the facts of this case. In *Estate of Daniel Guggenheim*, *supra*, at page 184, we observed about the above quoted portion of the regulation as follows:

* * * If the cited regulation has any applicability, which is doubtful, it does not require a different conclusion [than that reached in the *Guggenheim* case.] The words used therein—"additions and betterments"—indicate an intention to limit it to buildings or other physical properties * * *.

Petitioner has not cited the above regulation, and so it is our understanding that neither party relies upon it. That being so, our reference to the regulation is only to indicate part of the difficulty in our learning of any published ruling of the respondent which would serve to indicate to this Court what his interpretation of section 811 (c) has been in general in the application of section 811 (c) to the kind of situation here presented.[4]

---

[4] Although the facts in this case do not involve any reinvestment by the trustee of the property which the decedent transferred, the Coca-Cola stock, the following may be of interest, in general: Montgomery's Federal Taxes, Estates, Trusts and Gifts—1946–1947, p. 530:

"Although there are no published rulings on this question, the author understands that the Treasury, at least in the case of transfers in contemplation of death, makes a distinction between transfers to an individual donee and transfers in trust. In the case of transfers in trust, the property transferred is considered as being the trust fund as a whole, not the specific items making up the fund, and the property valued at the time of death is the property comprising the trust corpus at that time regardless of any reinvestments made by the trustee between the date of transfer and the date of death. On the other hand, in the case of a transfer to an individual, it is the Treasury's practice to value as of the date of death the specific property transferred by the decedent despite the fact that the donee may have disposed of that property prior to the time of the decedent's death."

See also *Humphrey* v. *Commissioner*, 162 Fed. (2d) 1; certiorari denied, 332 U. S. 817 (Nov. 10, 1947).

It is held that there should be included in the gross estate under section 811 (c) only the value of the shares of Coca-Cola stock which the decedent transferred to the trust, and that respondent erred in including in the gross estate the value of other property in the trust at the date of death which the trustee acquired after the trust was created out of his accumulations of trust income.

Reviewed by the Court.

*Decision will be entered under Rule 50.*