LORETTO MCKENNA RICHARDS, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

ERNEST V. RICHARDS, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 25437, 25438.   Promulgated November 28, 1952.

*Gibbons Burke, Esq.*, for the petitioners.
*Allen T. Akin, Esq.*, for the respondent.

368

372

■■■■■■■■■■■■■■■■■■■■■■■■■■■

OPINION.

HARRON, *Judge:* The issue in these proceedings is whether the income of nine trusts which Richards, as head of the community, created

for the benefit of his children is includible in his income and that of his wife under section 22 (a).

The petitioners contend that the income which was paid to the trustees of the Burke Trusts is taxable to the trustees because under the terms of the trusts there is no retention by the settlor of any beneficial enjoyment of the income, or of any control over the trusts corpus. The petitioners argue that the trusts involved in these proceedings do not come within the reach of the rule of *Helvering* v. *Clifford*, 309 U. S. 331.

On the other hand, the respondent contends that the settlor, Richards, retained economic rights which make the dividends—the income in question—taxable to the petitioners under the reasoning of the *Clifford* case.

The provisions of the trust instruments are for the most part clear and simple.

The instruments themselves were skillfully drawn and manifest an awareness on the part of the draftsman of the countless legal pitfalls to be avoided, in order to insulate a settlor from tax liability on trust income. In this regard, we have observed that the trust was to be irrevocable, spendthrift, and of the maximum duration permissible under Louisiana law; the trustees are free from any control by the settlor in their administration of the trust and handling of trust assets and are expressly prohibited from using the assets for the settlor's benefit. It can hardly be gainsaid that if the interest in petitioner's stock which was conveyed to the trustees amounts to income producing property, that fact taken in conjunction with the features of the trusts enumerated above would entitle petitioner to prevail in this proceeding. Accordingly, we have scrutinized with utmost care the character of that interest which petitioner conveyed to the trustees under the label of "legal title in and to a beneficial interest in and to" certain shares of stock. In so doing we have analyzed not only that which the settlor purported to give but that which he expressly retained in respect to such stock. We have carefully considered not merely the trust instruments themselves, the various agreements entered into between Richards and Paramount, and the "request and consent" of December 1, 1941, but the entire background against which all of the foregoing were cast for such illumination as may be gleaned from each element.

With respect to background, we have found that Paramount's purpose in associating itself with Richards in the formation and operation of Paramount-Richards and Enterprises was to reap the benefit of Richards' personal ability and experience in the field in which the two corporations were to be engaged. To that end, Paramount entered into the series of agreements with Richards to which detailed reference

has been made in our Findings of Fact. From Paramount's point of view, therefore, among the most important provisions of these various agreements were those designed to induce Richards to remain associated with Paramount. Included among these were the provisions limiting Richards' power to dispose of his stocks in the two corporations for the period of the option, at least, to a sale to Paramount itself, and vesting in Paramount broad preemptive rights at the expiration of the option periods. Since Richards was limited in this matter with respect to any disposition of the stocks, when he wanted to create the trusts involved here, he found it necessary, as in the case of the assignment to Individuals, to obtain from Paramount its consent to his plan to convey an interest in the stocks to the trustees. Richards assured Paramount, in his letter of December 1, 1941, that Paramount and Enterprises would not be required for any purpose, whether or not relating to the association and agreements between Richards and Paramount, to recognize any of the persons [trustees of the trusts] to whom a beneficial interest was transferred as the owner of any interest in the stock of Paramount-Richards or Enterprises because the full legal title in the stocks of each corporation would continue to be held by Richards, who would at all times exercise the rights and powers derived therefrom and remain liable for the performance of any obligations undertaken in connection therewith. In other words Richards was saying to Paramount that, although he was going to convey "beneficial interests".in his stock to certain persons, as far as Paramount was concerned, these persons were to be regarded as having no interest whatsoever in that stock, but that he would continue to hold legal title with the same rights, privileges, and obligations as if no transfer had taken place. On the strength of these representations Paramount consented to the transfers. Moreover it was with this same understanding as to the true state of affairs that the Burke trustees accepted, in writing, the several transfers.

In retaining the full legal title to the stocks in question, Richards retained the right to receive stock dividends, and to subscribe to new shares. He also retained the power to vote the shares of stock, which he has continued to exercise since the creation of the Burke Trusts. As he was the president of each corporation, both before and after the trusts were created, the voting rights which he retained could be used to advance or benefit his own economic interest, particularly in maintaining the aggregate salary, in the amount of close to $600 per week, payable to himself, as president, and to one person serving directly under him, the maximum provided in the November 22, 1934, agreement. Cf. *Helvering* v. *Clifford, supra; M. Friedman,* 7 T. C. 54; *Lillian R. Chertoff,* 6 T. C. 266, affd. 160 F. 2d 691. The right to vote stock has been regarded as one of the major rights of ownership entitled to considerable weight. See *Kohnstamm* v. *Pedrick,* 153 F.

2d 506; *Miller* v. *Commissioner*, 147 F. 2d 189, 193; *Edison* v. *Commissioner*, 148 F. 2d 810, certiorari denied 326 U. S. 721; *Price* v. *Commissioner*, 132 F. 2d 95. In this proceeding we must attribute substantial weight to the retention of his voting power by Richards, since the votes represented by 70 per cent of his stock in the two corporations, when added to the other 30 per cent which he retained, spell the difference between equal control—with Paramount—and a mere minority interest.

As the owner of the legal title to the stocks in question, Richards retained power to dispose of the stock, but the exercise of this power was subject to the option which Paramount held. Since the trustees of the trusts were subject to all of the agreements of Richards with Paramount, whatever expectancy, if any, the trustees had to ever receive any part of any proceeds derived from sales of the stocks was wholly contingent upon what Paramount might do under its option, and upon whether the option would be extended. In fact, the petitioners concede that Richards' power over the disposition of the stock itself was very greatly restricted by his agreements with Paramount. On the other hand, there was the possibility that Paramount would allow its option to buy the stock standing in the name of Richards to lapse, or that Paramount would exercise its option to have Richards purchase stock which it owned. In either eventuality, Richards' power to dispose of the stock for any consideration he might deem sufficient would no longer be restricted. Therefore, we cannot lightly dismiss the power retained by Richards to dispose of the stock, and we regard such power as one which must be evaluated as having economic value to Richards. The trust instruments do not clearly provide the extent to which the trusts would share in the proceeds of the sale of the stocks, if the stocks should be sold. This ambiguity in the trust instruments is further evidence that Richards retained, in reality, substantial economic interests in the stock. Cf. *Chandler* v. *Commissioner*, 19 F. 2d 623, affirming 41 B. T. A. 165; *Leslie H. Green*, 7 T. C. 263, affd. 168 F. 2d 994; *Gordon M. Mather*, 5 T. C. 1001, affd. 157 F. 2d 680, certiorari denied 330 U. S. 819; *Charles T. Fisher*, 28 B. T. A. 1164.

The petitioners contend that the various attributes of ownership which Richards retained were retained in a fiduciary capacity, or were reserved for the benefit of the beneficiaries of the trusts. The facts, the terms of the trust instruments, and the circumstances surrounding Richards' ownership of the stocks do not support this contention of the petitioners, and with it we cannot agree. Our conclusion is that the rights retained by Richards, which made up his legal title to the stocks were retained for Richards' own benefit, and therefore, his exercise of the rights which he retained was not subject to the control which is imposed upon a fiduciary. 2 Scott, Trusts, sec. 185 (1939);

1 Restatement, Trusts, sec. 185, comments (c) and (d) (1935); *Commissioner* v. *Branch*, 114 F. 2d 985.

The critical point here is that, under all of the conditions to which the trustees were subject, and where substantial and important attributes of ownership of the stock were retained by the settlor, as well as the full legal title to the stock, the donations of Richards to the trusts were no more than conveyance of the right to receive dividends. The owner of property must transfer more than the bare right to receive the income of the property, *Helvering* v. *Horst*, 311 U. S. 112, if he is to escape the incidents of tax upon such income.

The petitioners have referred us to the case of *Paramount-Richards Theatres, Inc.* v. *Commissioner*, 153 F. 2d 602. That case is not in point since the question involved there bears no relation to the question presented here.

It is held that the income from the class A shares of stock of Paramount-Richards and of Enterprises for the years 1942, 1943, and 1944, is includible in the income for the petitioners for the taxable years.

The trustees of the trusts, however, have reinvested that part of the income received by the trusts which was not distributed to the beneficiaries. During the years in question, the trusts received income from such investments. The parties have not made any distinction between the income from the investments made by the trustees and the income from the dividends on the stock of Paramount-Richards and of Enterprises. Such distinction, however, should be made. Once the trusts received the income from the shares of stock, Richards no longer had any control over it, and that part which was not distributed to the beneficiaries became part of the corpus of the trusts over which Richards could exercise no control. Just as once income of the trusts was distributed to the beneficiaries, subsequent income from the investment of such amounts could only be taxable to the beneficiaries and not to Richards and his wife, so the subsequent income from the investment of the undistributed income of the trusts is not properly taxable to Richards and his wife. *Abe Schreiber*, 6 T. C. 707, 714, affd. 160 F. 2d 108; cf. *Blair* v. *Commissioner*, 300 U. S. 5; *Helvering* v. *Horst, supra*, at page 119; and *Estate of James E. Frizzell*, 9 T. C. 979, 986–990, affd. (C. A. 5, 1949) 177 F. 2d 739. Accordingly, it is held that the petitioners are not taxable on the income received by the trusts in the taxable years from securities or property which the trustees purchased out of undistributed and accumulated income derived from dividends on the Paramount-Richards and Enterprises stock.

Reviewed by the Court.

*Decision will be entered under Rule 50*