1192

ESTATE OF RALPH OWEN HOWARD, JOSEPHINE M. HOWARD, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10287. Promulgated December 30, 1947.

*Leonard Haas, Esq.*, and *T. D. Seals, C. P. A.*, for the petitioner.
*Edward L. Potter, Esq.*, and *Newman A. Townsend, Jr., Esq.*, for the respondent.

## OPINION.

BLACK, *Judge*: The pleadings present the following issues for our decision:

(1) Was the transfer to Josephine M. Howard of 100 shares of Coca-Cola International stock of a value of $56,000 and a West Palm Beach residence of a value of $12,500 made in contemplation of death?

(2) Was the entire amount of the 26 United States savings bonds, valued at $20,590 and the $7,851.52, the amount on deposit in the Columbus Bank & Trust Co., and the $959.48 on deposit in the Florida Bank & Trust Co., all of the foregoing property being jointly owned by decedent and Josephine M. Howard, properly includible as part of decedent's gross estate?

We shall first consider issue 1, whether the transfers of 100 shares of Coca-Cola International Corporation stock and a residence at West Palm Beach, Florida, were made in contemplation of death. The Commissioner does not contend that the transfers in question were incomplete; that is to say, intended to take effect in possession or enjoyment at or after decedent's death. The applicable statute is section 811 (c) of the Internal Revenue Code, the material provisions of which are set out in the margin.[1]

We shall discuss first the transfer of the Coca-Cola International stock. Respondent contends that the decedent made a gift of the stock to Mrs. Howard on or about November 29, 1935, and that the transfer was made in contemplation of death and the value thereof should be included in decedent's gross estate under the provisions of section 811 (c). Petitioner contends that the decedent gave the stock to her in 1929, when he was 64 years of age, that the transfer was not made in contemplation of death, and that, even if it should be decided that the transfer was made in 1935, when decedent was 70 years of age, nevertheless, the transfer was not made in contemplation of death and should not be included in the decedent's gross estate.

Our first consideration is whether the gift was made in 1929 or 1935. In *Lunsford Richardson*, 39 B. T. A. 927, 932, we said:

It is well settled that before there can be a completed gift the donor must surrender dominion and control of the subject matter of it. *Edson* v. *Lucas*, 40 Fed. (2d) 398; *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. (2d) 287; *Delight Ward Merner*, 32 B. T. A. 658; 79 Fed. (2d) 985; *Adolph Weil*, 31 B. T. A. 899; 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552; *Jackson* v. *Commissioner*, 64 Fed. (2d) 359; *Dulin* v. *Commissioner*, 70 Fed. (2d) 828. The "delivery" must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit. *City Bank Farmers Trust Co.* v. *Hoey*, 23 Fed. Supp. 831; *In re Van Alstyne*, 207 N. Y. 298; 100 N. E. 802. * * *

Applying these principles to the facts pertaining to the 100 shares of Coca-Cola stock referred to above, we are of the opinion that a

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter.

completed gift was not made prior to November 29, 1935. It is probable that decedent intended to make a gift in 1929, but one of the essential elements to the consummation of a valid gift was missing, viz., a delivery as perfect as the nature of the property and the circumstances and surroundings of the parties reasonably permitted. The stock certificates remained in decedent's name until November 29, 1935, when they were transferred to his wife. Decedent did not in 1929 put the subject matter of the gift beyond recall, and until that was done no gift was consummated. Cf. *Burnet* v. *Guggenheim*, 288 U. S. 280, 286. Moreover, when the decedent made the gift tax return on February 18, 1936, he stated that the date of the gift was May 25, 1935, thus indicating that the decedent himself did not think he had made a completed gift in 1929. Thus, we hold that the completed gift of these 100 shares of Coca-Cola International stock was made in 1935.

We shall now consider whether the transfer of the stock to Mrs. Howard in 1935 was made in contemplation of death, as that phrase is used in the statute. The transfer in question was made approximately 6 years before the decedent's death, which makes inapplicable the presumption mentioned in section 811 (c), relative to transfers made within 2 years prior to death. Since, however, the respondent has determined that the transfer was made in contemplation of death, the burden is upon the petitioner to show that it was not so made. What was the dominant motive of the decedent in making the transfer of the property here in question? Some of the evidentiary facts are set out in our findings. These facts, among other things, show that at the time of the gift in 1935 decedent was in good health for a man of his years. He was 70 years of age, but age alone does not furnish a decisive test as to whether a transfer is motivated by considerations associated with death. *United States* v. *Wells*, 283 U. S. 102; *Flack* v. *Holtegel*, 93 Fed. (2d) 512. The medical history of decedent shows no serious illness or ailment prior to the making of the gift such as would cause a normal person to believe that death was imminent. The evidence convinces us that the dominant purpose of decedent in making the gift of the stock was to provide an independent income for his wife so that she could have money of her own to spend. The evidence indicates that all during the decedent's life he enjoyed spending money, and prior to his marriage he had saved little, if any, money. His wife, on the other hand, was thrifty and economical and induced him to save and invest his money, and in appreciation he desired to provide her with an independent income. He often expressed his appreciation to Mrs. Howard for what she had done for the household in saving money. We think the object of this gift has a direct connection with motives associated with life rather than with death. Another circumstance to be noted is that, when decedent made the gift in question

and the other one hereinafter discussed, he did not give substantially all of his property away, thus indicating a testamentary disposition of his property. He had a comfortable fortune left after giving the property to his wife.

The executrix filed an estate tax return on January 4, 1943, disclosing a gross estate of $190,889.43, and paid estate tax thereon of $33,731.59.

We have, therefore, after a consideration of all of the evidence, found as an ultimate fact that the gift in question was not made in contemplation of death. It follows that the respondent erred in including the value of this gift as a part of the decedent's gross estate.

Was the transfer of the residential property located at West Palm Beach, Florida, made in contemplation of death? Title to the property was acquired in Mrs. Howard's name on December 29, 1939, and thereafter a house was constructed on the property at a cost of approximately $10,000. The house was completed in 1941 and at the time of decedent's death it had a value, including furnishings, of $12,500. All expenses incurred in the construction of the house were paid for by the decedent with funds from the joint bank account in the Florida bank. It was not, however, jointly owned property at the time of decedent's death. It was owned entirely by Mrs. Howard, and if it is to be included in decedent's estate it must be so included because he transferred the property and the funds which went into its construction in contemplation of death. The transfer was made within two years prior to the decedent's death and the petitioner has not only the burden of overcoming the correctness of respondent's determination, but the rebuttable statutory presumption affecting gifts made by a decedent within two years prior to his death mentioned in section 811 (c).

Petitioner contends, first, that the residence was constructed by her on a lot purchased by her in 1939 and that the total cost of $10,000 for the land and building was paid with her funds in the joint bank account and, second, that, even if the residence were deemed a gift from decedent to her, it was not made in contemplation of death within the meaning of section 811 (c). Regardless of whether the property was purchased and the residence constructed with funds which Mrs. Howard had contributed to the joint bank account, we do not think the transfer of the property was made in contemplation of death, as determined by the respondent, and we have so found as an ultimate fact in our findings. It is upon that ground alone that respondent has included the value of this property in decedent's estate. The facts in the record convince us that the dominant motive connected with the transfer of this property by decedent to his wife was associated with life, and not with death. From the facts we hold that decedent's dominant purpose in procuring the lot in Florida and constructing a

residence upon it was to provide his wife a home which would be hers and in her own name. He was in good health when it was purchased and constructed and the surrounding facts negative the idea that it was done in contemplation of death. The respondent, therefore, erred in including the value of this property as a part of the decedent's gross estate. *United States* v. *Wells, supra; Allen* v. *Trust Co. of Georgia,* 326 U. S. 630; *Estate of Fletcher E. Awrey,* 5 T. C. 222; *Estate of Charles Delaney,* 1 T. C. 781; *McGregor* v. *Commissioner,* 82 Fed. (2d) 948.

## Issue 2.

Issue 2 involves two items of jointly owned property, namely, United States savings bonds which had a total value of $20,590 at the date of decedent's death and joint bank accounts which contained total deposits of $8,811. The Commissioner has included these entire amounts in decedent's estate, whereas petitioner contends that only one-half of each should be included.

We shall first consider the United States savings bonds. Section 811 (e) of the Internal Revenue Code is the applicable statute.[2] Our findings of fact show that the sum of $135,113.05 was deposited in the joint bank account of decedent and his wife from the time the account was first opened to the date of decedent's death. Of this amount, we have found that $33,677.50 was deposited from funds which belonged separately to Mrs. Howard. We have also found from the evidence that this $33,677.50 was used in purchasing securities and in the construction of the home for Mrs. Howard in West Palm Beach, Florida. The items of property thus purchased have been enumerated in our findings of fact. The only part of this property which was purchased in the joint names of decedent and his wife was the wife's one-half interest in the United States savings bonds. The other property purchased with these separate funds which Mrs. Howard deposited in the joint bank account was placed in the name of Mrs. Howard, and the Commissioner has not included any of it in decedent's estate, except the residence property in Florida, and that was included, as we have already stated, under the contemplation of death provisions of the statute. We have held against respondent on that issue.

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(e) JOINT AND COMMUNITY INTERESTS.

(1) JOINT INTERESTS.—To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: \* \* \*

The face value of the jointly owned United States savings bonds was $26,000 and the net amount paid for them out of the joint bank account was $19,500. The question is, Has petitioner established that $9,750 of this amount was paid out of funds originating with Mrs. Howard and deposited in the account by her? We think this question must be answered in the affirmative. The evidence establishes to our satisfaction that when these United States savings bonds were purchased from time to time it was understood and agreed by decedent and his wife that the purchase money required to buy the bonds should come one-half out of the funds of decedent in the joint bank account and one-half out of the funds which had been deposited in it by Mrs. Howard. Respondent concedes that dividends paid on the 100 shares of International Coca-Cola stock after it was transferred to Mrs. Howard in 1935 belonged to her and was her own separate property. The evidence shows these dividends amounted to $21,517 prior to decedent's death and were deposited in the joint bank account. However, respondent contends in his brief that when these dividends were received by Mrs. Howard and deposited by her in the joint bank account, then for the purpose of applying the provisions of section 811 (e) relating to "jointly owned property" it must be held that these dividends are to be treated as "originally belonging" to decedent. Respondent in his brief relies in support of this contention on *Dimock* v. *Corwin*, 306 U. S. 363. He points out that in the *Dimock* case the evidence disclosed that the decedent's wife contributed to the purchase of the jointly owned property, but her contribution had previously been given to her without consideration by the decedent. "Under these circumstances," says respondent, "the Supreme Court held that the full value of the jointly owned property should be included in the decedent's estate for tax purposes." Then respondent goes on to say in his brief:

It is submitted that the bank deposits in the instant case are similar to the personal property in the *Dimock* case. Except for the $3,072.00 in dividends paid on the Coca Cola stock [meaning other Coca-Cola stock than the 100 shares International Coca-Cola stock here in question] owned by Mrs. Howard, all other deposits made in Mrs. Howard's behalf stemmed from property given to her by decedent or purchased for her by him from funds in the joint account. Such deposits must be treated as if they had originated with the decedent since he gratuitously supplied Mrs. Howard with the stocks which earned the funds composing the deposit. If Mrs. Howard had sold the stock and deposited the proceeds of the sale in the joint bank account, the statute, as interpreted by the *Dimock* case, would clearly regard the deposit as decedent's property for estate tax purposes. No reason is apparent why dividends earned on the stock should not be treated in the same manner.

We do not agree with respondent's contention that dividends received by Mrs. Howard on stock registered in her own name should be treated as property originating with Mr. Howard. After the 100

shares of International Coca-Cola stock were given to Mrs. Howard in 1935 by her husband and certificate for these shares was issued in her name, she became the absolute owner of the stock and the dividends which she thereafter received on this stock were her individual property, and when she deposited these dividends in the joint bank account it was her property which she deposited. Cf. *Estate of James E. Frizzell*, 9 T. C. 979. In no sense did these dividends which she deposited originate with her husband. They originated with the International Coca-Cola Corporation. We do not think anything in the case of *Dimock* v. *Corwin*, *supra*, is to the contrary. We fail to see where *Dimock* v. *Corwin* has any application to dividends which Mrs. Howard received on stock which she owned in her own right, even though this stock had been given to her by her husband. If the proceeds from the sale of this stock had been deposited in the joint bank account, that would be another matter. We have no such situation here. We decide against respondent on this point. We hold that Mrs. Howard contributed her one-half share of the purchase price of the United States savings bonds and, therefore, only one-half of their value should be included in decedent's gross estate.

As to the money on deposit in the joint bank accounts at the time of decedent's death, we hold against petitioner on this issue. Our findings show that Mrs. Howard deposited out of her own separate funds $33,677.50 and these funds were used to purchase property on behalf of Mrs. Howard costing $33,693.94. This was $16.94 more of property purchased than Mrs. Howard had deposited in the joint bank account. This difference is slight and neither party makes any point of this small difference. It does show, however, that at the time of decedent's death none of the deposits in the joint bank accounts represented funds originating with Mrs. Howard. The only way we could sustain petitioner on this part of issue 2 would be to hold that the $9,000 dividends paid on the 100 shares of International Coca-Cola stock between 1929 and 1935, when the shares were transferred to the name of Mrs. Howard, were the individual property of Mrs. Howard. This holding we are unable to make. These dividends were received by decedent in his own name and were deposited by him in the joint bank account, and we hold they were funds contributed by him to the joint bank account and must be so treated. We hold that the entire amounts in the two joint bank accounts at the date of decedent's death should be included in his gross estate under section 811 (e) of the code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*