**HARVEY v. UNITED STATES.**

No. 47 C 1244.

United States District Court
N. D. Illinois, E. D.

Sept. 15, 1949.

W. M. Keeley, Chicago, Ill., for plaintiff.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., Benjamin H. Pester, Sp.Asst. to the Atty. Gen., and LeRoy R. Krein, Asst. U. S. Atty., Chicago, Ill., for defendant.

IGOE, District Judge.

This cause duly came on for trial on May 19, 1949. Evidence was introduced by the parties and the cause was thereupon taken under advisement. The Court now makes and files herein the following:

### Finding of Facts

1. This is a suit for recovery of Federal estate tax assessed against the estate of Arlington C. Harvey, deceased, and paid by plaintiff as executrix of said estate to the Collector of Internal Revenue at Chicago.

2. The death of said Arlington C. Harvey occurred on the 16th day of November, 1943, when he was a resident of Evanston, Cook County, Illinois.

3. Plaintiff was appointed executrix of the will and estate of said Arlington C. Harvey, deceased, by order entered on the 13th day of December, 1943, by the Probate Court of Cook County, Illinois; and at all times since she has continued to be and act as the fully authorized executrix of the said will and estate.

4. On October 11, 1944, plaintiff, acting as such executrix, filed with the Collector of Internal Revenue, Chicago, Illinois, the Estate Tax Return in the said estate of Arlington C. Harvey, deceased.

5. On June 21, 1945, the acting Internal Revenue Agent in Charge at Chicago made and mailed to plaintiff, as such executrix, a copy of his report of examination of said Estate Tax Return, and therein he stated a tax liability of said estate to the United States in the amount of $32,151.30.

6. On July 3, 1945, plaintiff, as such executrix, filed with the Internal Revenue Agent in Charge at Chicago her protest against said findings of the Acting Internal Revenue Agent in Charge; and requested a hearing with opportunity to present proofs; and thereafter hearings were held upon the said return and statement before a member of the staff of the Internal Revenue Agent in Charge at Chicago, and before the Chicago Division of the Technical Staff.

7. On June 14, 1946, the Commissioner of Internal Revenue, by the Internal Revenue Agent in Charge at Chicago, mailed to plaintiff, as such executrix, a statement of determination of tax liability of said estate, asserting a deficiency in tax of $32,151.30, and a copy thereof, marked Exhibit C, is attached to Exhibit 1, her Claim for Refund in her complaint.

8. On July 29, 1946, plaintiff, as such executrix, under protest, paid to the Collector of Internal Revenue at Chicago the tax so assessed in the amount of $32,151.30, with interest in the amount of $2,817.42, making a total payment of $34,968.72.

The Collector to whom said payment was made was not in office as such collector at the time this action was commenced.

9. On the 24th day of September, 1946, plaintiff, as such executrix, filed with the said Collector of Internal Revenue, Chicago, her Claim for Refund of the said tax so paid, and a copy of her said Claim for Refund with attached Exhibits is attached to her Complaint as Exhibit 1, and the said Claim for Refund is in proper form.

10. The said Claim for Refund was duly forwarded to the Commissioner of Internal Revenue and was rejected by the Commissioner of Internal Revenue, and notice of such disallowance and rejection was mailed to plaintiff by the Internal Revenue Agent in Charge at Chicago, Illinois, bearing date February 18, 1947.

11. In her complaint, which was filed in this cause on August 27, 1947, plaintiff incorporates her said Claim for Refund and attached statements and documents wherein she states the transactions and matters asserted as grounds for her said Claim for

Refund; and said transactions are referred to hereinafter; and prays that judgment be entered in her favor and against defendant for the amount of said taxes by her paid with interest thereon and for costs of suit.

12. On October 29, 1947, on request of defendant, order was entered in this cause extending the time within which defendant may file its answer or otherwise plead to the complaint to include December 26, 1947.

13. On December 26, 1947, on request of defendant, order was entered in this cause extending time for defendant to answer to include March 26, 1948.

14. On February 20, 1948, defendant filed in this cause its Motion to Dismiss the complaint on the ground that the proper venue of this suit is in the Eastern District of Wisconsin and that complaint alleges that plaintiff resides at Broadlands Farm near North Prairie in the State of Wisconsin. Briefs of the parties were filed and the said motion was argued and overruled on April 9, 1948, and order was then entered overruling said motion.

15. On May 10, 1948, defendant filed its answer in this cause.

16. The issues and questions presented in this case are the following,—

A. Concerning the assessment by the Commissioner of Internal Revenue, under the provisions of Section 811(e) of the Internal Revenue Code, 26 U.S.C.A. § 811(e), of the entire value of the property held by the decedent and his wife in their two names at the time of his death. The property referred to by the Commissioner in said assessment is listed in the Estate Tax Return filed by the executrix, a copy whereof has been received in evidence.

B. Concerning the assessment of two certificates issued by Bell Savings and Loan Association and listed in said Estate Tax Return as No. 24 and No. 25 on Sheet E 5(B) of Schedule E of said return.

C. Concerning the assessment of certain of the certificates listed in Sheet E 5(A) and Sheet E 5(B) of Schedule E of said return, and whether they were held in joint tenancy or in tenancy in common.

D. The assessment of the farm machinery and equipment listed in said Estate Tax Return on Sheets E 6(A) and E 6(B) of Schedule E of said return, as jointly held property.

E. The value for taxation of the residence property in Evanston, listed in said Estate Tax Return on Sheet E 1 of Schedule E of said return.

F. The insurance listed in said Estate Tax Return on Sheet VII, Schedule D of said return.

G. The deductions listed in said Estate Tax Return on Sheet XVIII, Schedule O of said return.

17. Arlington C. Harvey and Elizabeth C. Harvey were married in August, 1911, in Columbus, Ohio. At the time of their marriage, Mr. Harvey was 38 years of age and Mrs. Harvey was 23 years of age. They resided in or near that city until 1926, when they moved to Evanston, Illinois. They resided in Evanston until the death of Mr. Harvey in November, 1943. Elizabeth C. Harvey moved to Broadlands Farm, near the town of North Prairie, State of Wisconsin, in 1944, where she now resides. (Stip. 1 and 3.)

18. Arlington C. Harvey, during all his business life, was a lawyer and engaged in the practice of that profession. He was retained by Pure Oil Company (then of Columbus, Ohio, and now of Chicago) in 1916 or 1917. He was General Counsel of the company for many years. For his services he received a salary ranging from $10,000 in the early years to $18,000 per year after 1923. (Stip. 2.)

19. On August 4, 1911, Arlington C. Harvey deeded to his wife, Elizabeth C. Harvey, the property in which they made their first home. This consisted of a house which he had built upon some lots owned by him. The conveyance was without monetary consideration. The deed of conveyance to Elizabeth C. Harvey was recorded in the office of the Recorder of Deeds of Franklin County, Ohio, on November 13, 1914. (Stip. 3.) This property was conveyed in part payment for the Spring Street Garage, next paragraph 20.

20. On September 11, 1915, the property known as Spring Street Garage in Columbus, Ohio, was purchased for $13,000, of which $2,500 was paid in cash by Mr. Harvey and the residence property referred to above was conveyed in payment of the balance of $10,500, and title to the Spring Street Garage was taken by conveyance to Elizabeth C. Harvey, as grantee. This property is still owned by Mrs. Harvey. It is not listed in the Estate Tax Return, and, excepting rents from that property is not involved in this accounting. Mrs. Harvey has received rentals paid four times a year from the Spring Street Garage amounting to $22,400 to September, 1943. (Stip. 4, 20. Record 24, 25.)

21. On September 11, 1915, the property referred to as the High Street Garage in Columbus, Ohio, was purchased for $17,000, of which $7,000 was paid in cash by Mr. Harvey. The title thereto was conveyed by deed to Elizabeth C. Harvey, as grantee, subject to a mortgage for $10,000 which mortgage Mr. Harvey later paid off. The High Street Garage was sold August 1, 1925 for $30,000 cash, and securities were purchased in the name of Mrs. Harvey for that sum. From September 11, 1915 to August 1, 1925 Mrs. Harvey received rentals from this garage property at $200 per month. From September 11, 1915 to August 1, 1925 the net rental received by her from this property was $21,950. (Stip. 4, 7 Record 24.)

22. On August 4, 1917, Arlington C. Harvey purchased a dwelling property at 19th Avenue, Columbus, Ohio, for $4,600, paid by him out of funds other than investment funds, and title to the property was taken in the name of Elizabeth C. Harvey. This property was sold on April 11, 1925 for $10,500, of which $6,500 was received in cash and a second mortgage was taken in the name of Elizabeth C. Harvey to secure the payment of $4,000. From April 1925 to November 1931 Mrs. Harvey received interest in amount of $1,680 on this second mortgage, which, in 1931, was cancelled by foreclosure of the first mortgage on the property. (Stip. 5.)

23. On January 3, 1925, the property referred to as Bryden Road property was purchased with deed conveying it to Mrs. Harvey for $20,000, of which $13,442.74 was paid from funds and income accumulated from properties, titles to which were in her name. The deed to Mrs. Harvey was subject to a mortgage on the property for $6,557.26, which sum was later paid with funds and income accumulated from her properties herein referred to. (Stip. 6.) This property was conveyed at a value of $30,000 in August 1926 as part of the purchase price of the bank property hereinafter referred to. (Stip. 8.)

24. On August 14, 1926, a bank building property on West Gay Street in Columbus, Ohio, was purchased for $80,000 with deed conveying the property to Mrs. Harvey. As a part of the purchase price, she conveyed the Bryden Road property, at a value of $30,000, the securities described in preceding Paragraph 21 at a value of $30,000, $6,000 from funds accumulated from income from properties hereinbefore described, and $14,000 from funds furnished by Arlington C. Harvey out of funds other than investment funds. At the time of purchase of this property, it was subject to a 99 year lease at a net rental of $5,000 per year, lessee to pay all taxes, insurance, repair and upkeep. From August 14, 1926 to October 1, 1929 Mrs. Harvey received from this property in rents the sum of $15,000, paid by checks for $1,250 four times a year. (Stip. 8 Record 24.)

25. On October 1, 1929, the lessee purchased the West Gay Street Bank property for $100,000 in cash. (Stip. 9.) To the proceeds of this sale Mr. Harvey had contributed the $17,000 invested in the High Street Garage and $14,000 invested in the bank property, or a total of $31,000, and Mrs. Harvey had contributed from her income and profits on sales $69,000.

26. $75,000 of the proceeds of the sale of the bank property was used in purchase of Pure Oil Company bonds in October 1929, and $5,000 was used in the purchase of Pure Oil Company bonds in 1931. These bonds were issued and registered in the name of Mrs. Harvey. Of these bonds

$21,000 in principal were sold in 1923 for $20,580.45; and $20,000 in principal in 1936 for $20,000; and $39,000 in principal for $41,450.00 in 1937. From 1931 to 1937 Mrs. Harvey received income from the Pure Oil Company bonds amounting to $27,855.50. She clipped the coupons from these bonds and deposited the money in her account. (Stip. 9 Record 23.)

27. On August 3, 1929, the residence in Evanston, Illinois, described on Sheet E 1 of Schedule E of the Estate Tax Return, was purchased for $13,400 in cash, and a $15,000 mortgage and a $4,600 mortgage on the property were assumed. Title was taken in the name of Arlington C. Harvey and Elizabeth C. Harvey. Of the purchase price, $13,400 was paid with money borrowed from a bank in Evanston, Illinois secured by Pure Oil Company bonds. (Record 22.) This bank loan, and later the $4,600 mortgage were paid by money received from the sale of the West Gay Street Bank property. The $15,000 mortgage and $450 interest was paid with funds and income received from properties in the name of Mrs. Harvey, hereinbefore described. This residence property was sold in May 1944 for $16,500. From the proceeds of sale a broker's fee and expenses of sale were paid in the amount of $925, together with taxes of $125, accruing after January 1, 1944. (Stip. 11.) Mrs. Harvey received the $100,000 proceeds of the sale of the bank property above by certified check, and she deposited it in her account in the City National Bank of Evanston. At that time by check given to that bank she paid the loan that bank had made in connection with the purchase of the residence property in Evanston, Illinois, above referred to, and she then received the bonds deposited as collateral for that loan and put them in the safety deposit box in that bank. (Record 21, 22, 23.)

28. On September 10, 1927, 220 shares of 8% preferred Pure Oil Company stock valued at $24,000 were transferred to and registered in the name of Elizabeth C. Harvey, $12,000 of the purchase price was paid for from funds and income received from the properties in the name of Mrs. Harvey, hereinbefore described, and $12,000 was paid with funds of Arlington C. Harvey, other than investment funds. This stock was sold on September 11, 1930 for $24,557.62; and $24,000 thereof was used to purchase four certificates of Buckeye Building and Loan Association of Columbus, Ohio, stock, in principal amount of $24,000. (Stip. 12.)

29. In each of the years 1925 and 1926, a $1,000 certificate of Buckeye Building and Loan Association stock was purchased for a total of $2,000, paid with funds and income received from property in the name of Mrs. Harvey, hereinbefore described. The six certificates of Buckeye Building and Loan Association stock were surrendered in October 1930 for three certificates of the same stock valued at $30,000 and there was paid therefor an additional $4,000 with funds and income received from property in the name of Mrs. Harvey, hereinbefore described. In 1939 these certificates were replaced with Certificates 4, 5 and 6 on Sheet E 5(A) of Schedule E of the Estate Tax Return, which were payable to "A. C. or E. C. Harvey". (Stip. 13.) To the investment in Certificates 4, 5 and 6 ($30,000) Mr. Harvey contributed $12,000 at Paragraph 28 above, and Mrs. Harvey contributed from her income $18,000.

30. The farm property in Wisconsin was purchased by Mr. and Mrs. Harvey in October 1933; and $20,000 of the purchase price; $4,000 mortgage with $100 interest; and $6,000 in improvements were paid with funds and income received from the properties in the name of Mrs. Harvey, hereinbefore described. Title to this property was taken in the names of Arlington C. Harvey and Elizabeth C. Harvey and is listed on Sheets E 2(A) and E 2(B) of Schedule E of the Estate Tax Return. The deed conveys to grantees "a life estate as joint tenants during their joint lives and an absolute fee forever in the remainder to the survivor of them." (Stip. 14.)

31. On November 26, 1934, Arlington C. Harvey gave to Elizabeth C. Harvey, without payment to him of a monetary consideration, 192 shares of 6% preferred

stock of Pure Oil Company, which had a value of $17,856, and they were registered in her name on the books of the company and on April 6, 1936 were exchanged for 226 shares of the same stock which were registered in her name. (Stip. 15.)

When Mr. and Mrs. Harvey bought the farm in Wisconsin in 1933, to finance that purchase, Mrs. Harvey cashed $21,000 of the bonds she owned to apply on that purchase. Mrs. Harvey testified that in 1934 Mr. Harvey thought Mrs. Harvey should have her capital somewhat restored to its former level and gave her that stock so her income would not be materially reduced. (Record 25.)

32. On May 29, 1936, thirty shares of Pure Oil Company common stock were purchased for $450 and on January 4, 1937 another 60 shares of said stock were purchased for $900 with funds and income received from property in the name of Mrs. Harvey, heretofore described. This stock was registered in the name of Mrs. Harvey. (Stip. 16.)

33. On February 1, 1937, by exercise of rights evidenced by warrants attached to the Pure Oil Company bonds registered in her name, 1,500 shares of Pure Oil Company common stock was purchased for $22,500 and registered in the name of Mrs. Harvey, and on February 4, 1937 the 1590 shares of Pure Oil Company common stock were sold for $36,015.73. (Stip. 17.) In the purchase of the 1500 shares, Mrs. Harvey arranged a loan with the City National Bank of Chicago putting up as collateral some of the bonds of Pure Oil Company which she owned. When the stock was sold she received a check which she deposited in the bank in Evanston where she had her account and she then drew a check to City National Bank of Chicago for $22,500 to pay the loan made by that bank. Plaintiff's Exhibit 2 received in evidence is that check dated February 5, 1937 signed by Elizabeth C. Harvey, payable to the Order of City National Bank & Trust Company of Chicago and bearing its endorsement. (Record 15, 16, 17.) The bonds on which the purchase warrants were issued were purchased by Mrs. Harvey from accumulated income which belonged to her.

The income came from rents of the properties that have been mentioned, the two garages, the bank building, and interest on the stocks. (Record 33.)

The profit and income which Mrs. Harvey made in the 1,500 share transaction was in the neighborhood of $13,000 and was shown in her income tax return in January 1938. Plaintiff's Exhibit 3 is the check by Mrs. Harvey to Collector of Internal Revenue dated January 13, 1938, and drawn on her account in State Bank and Trust Company with which she paid that income tax. (Record 17, 18.)

34. The Items 1, 2 and 3 of the Savings and Loan Association stock listed on Sheet E 5(A) of Schedule E, Estate Tax Return, were purchased on February 19, 1937 for $15,000 with profits on sale of stock recited in Paragraph 33, and with other funds received from the income and property in the name of Mrs. Harvey, hereinbefore described; and title was taken in the names of "A. C. Harvey or Elizabeth C. Harvey, or survivor." (Stip. 18.)

35. On December 30, 1936, 20 shares of 6% preferred Pure Oil Company stock were purchased for $2,000 and on June 5 and July 20, 1937, an additional 400 shares of 6% preferred Pure Oil Company stock were purchased for $40,387.50 with proceeds received from the sale of the Pure Oil Company bonds hereinabove referred to, and this stock was registered in the name of Mrs. Harvey. (Stip. 10.)

36. In February and March 1939, the 646 shares of 6% preferred Pure Oil Company stock referred to in Paragraphs 31 and 35 above, were sold for $55,277.04; and these proceeds, together with $265.95 of funds received from property hereinbefore described were used to pay for 110 shares of 5% preferred Pure Oil Company stock purchased for $8,425.76 and 600 shares of the same stock for $47,118.33 or a total of $55,543.99. These 710 shares of stock were registered in the name of Mrs. Harvey, and were sold in December 1942 and January 1943 for the sum of $64,994.04, which was used to pay for Savings and Loan Association stock listed at $65,000 on Sheet E 5 (A) and (B) of Schedule E, Estate Tax Return, as Items 11 to

21, inclusive, and 24 and 25. From November 1935 to January 1943, the Pure Oil Company paid dividends on said stock amounting to $25,612.50. (Stip. 19.)

Statements of Smith, Barney & Co., brokers, reciting these sales and purchases of stock for account of Mrs. Elizabeth C. Harvey were received in evidence as Plaintiff's Exhibits 4, 5 and 6 (and Record 19, 20).

To the investment in the Certificates 11 to 21 and 24 and 25 ($65,000) Mr. Harvey contributed the $17,856 at Paragraph 31 above, and Mrs. Harvey contributed from her profits and income $47,144.

37. The dwelling at North Prairie listed on Sheet E 3, Schedule E, Estate Tax Return, was purchased July 19, 1937 with funds and income received from properties in name of Mrs. Harvey, hereinbefore described. Title was taken in Arlington Harvey and Elizabeth Harvey, husband and wife, as joint tenants, with right of survivorship. (Stip. 21.)

38. In October 1933, Guernsey cattle were purchased for $2,300 and placed on the Wisconsin farm. The herd and increase therefrom were sold in November and December 1942 for $3,648.62, which said sum was deposited in a joint account in the Waukesha National Bank at Waukesha, Wisconsin, and in July 1943 was transferred to the joint account in the State Bank of Genesee Depot of Genesee Depot, Wisconsin. The balance in said account was $2,131.37 on November 16, 1943. Sheet E 4 of Schedule E, Estate Tax Return. (Stip. 22.) Mrs. Harvey purchased the Guernsey cattle with funds in her account in Evanston, the result of income she had accumulated and a few hundred dollars from her mother's estate. The cattle were registered in her individual name by the Golden Guernsey Association. (Record 20, 21.)

39. On November 16, 1943, there was on deposit in joint account at State Bank and Trust Company, Evanston, Illinois, $5,978.41 listed on Sheet E 4 of Schedule E of Estate Tax Return. Some of the receipts and income from the properties aforesaid were deposited to this account, but the amount so deposited cannot be determined. (Stip. 23.)

40. The farm equipment listed on Sheet E 6 (B) of Schedule E, Estate Tax Return, was purchased with funds from the joint account at State Bank and Trust Company, Evanston, Illinois. (Stip. 24.) This farm equipment was valued in the return and in the taxation at $10,250.

41. Savings and Loan Certificates 22 and 23 listed on Sheet E 5 (B), Schedule E, Estate Tax Return, were purchased with funds and income received from the above-described properties for $10,000 on September 22 and 23, 1943. (Stip. 25.)

42. On Sheet E 5 (B) of Schedule E of the Estate Tax Return, Certificates 24 and 25 are listed. These were purchased from and issued by Bell Savings and Loan Association of Chicago; and their purchase is recited in Paragraph 36 hereinabove.

They were numbered respectively 7618 and 7619, dated December 31, 1942, each in amount of $5,000, representing 50 participating shares in the issuing association.

Certificate 7618 was issued in the name "A. C. Harvey, Trustee for Elizabeth Harvey, under Trust Agreement 1901, December 31, 1942."

This Trust Agreement recites:

"That during his lifetime the Trustee shall have and exercise all rights of ownership of said stock.

"That Trustee expressly reserves the right to change the beneficiaries hereunder from time to time, such change in beneficiaries to be evidenced by written endorsement hereon, acknowledged by the Bell Savings and Loan Association.

"The Trustee shall have power to vote as a member of said Association as though the shares were held absolutely, to make payments upon and to surrender such shares, in whole or in part. The repurchase, redemption or withdrawal value of any such shares, or dividends thereon or other rights relating thereto, may be paid or delivered, in whole or in part, to said Trustee without regard to any notice to the contrary. The payment or delivery to said Trustee, or a receipt or acquittance

signed by the Trustee, shall be a valid and sufficient release and discharge of Bell Savings and Loan Association for the payment or delivery so made. Upon the death of the Trustee, the payment or delivery to the beneficiary or beneficiaries hereunder, or a receipt or acquittance signed by any such beneficiary or beneficiaries for any such payment or delivery, shall be valid and sufficient release and discharge of Bell Savings and Loan Association for the payment or delivery so made.

"The beneficiary or beneficiaries hereunder and their addresses are:

"Elizabeth C. Harvey (wf) Address Same" and was signed "A. C. Harvey".

Certificate No. 7619 was issued in the name of "Elizabeth C. Harvey, Trustee for A. C. Harvey, under Trust Agreement 1902, December 31, 1942." This Trust Agreement is in same form as No. 1901 quoted above, except that the beneficiary is "A. C. Harvey (husband)" and it was signed "Elizabeth C. Harvey." (Stip. 26)

43. Certificates are listed on Sheets E 5(A) and E 5(B) of Schedule E of the Estate Tax Return.

Certificates there numbered 1 to 23, inclusive, were payable as stated on Sheet E 5(C) of Schedule E of said return.

Certificates listed as numbers 9, 10, 11, 12, 15, 16 were payable to "A. C. Harvey or Elizabeth C. Harvey" and were in total amount of $30,000.

Certificates listed as numbers 4, 5, 6 were payable to "either A. C. or E. C. Harvey" and were in total amount of $30,-000.

Certificates listed as numbers 7, 8, 14, 22 were payable to "A. C. Harvey and/or E. C. Harvey" and were in total amount of $15,000.

Certificates listed as numbers 1, 2, 3, 13, 17, 18, 20, 21 and 23 were payable to A. C. Harvey or Elizabeth C. Harvey, with words "Survivor" or "Survivorship", and were in total amount of $45,000.

Certificate listed as number 19 was payable to "A. C. Harvey and Elizabeth C. Harvey in joint tenancy with right of survivorship" and was in amount of $5,000. (Stip. 27.)

44. In Schedule D, Estate Tax Return, payment to Elizabeth C. Harvey, wife of decedent, under Group Policy carried by Pure Oil Company in Travellers Insurance Company is listed.

Regarding this policy the Pure Oil Company by its letter states:

"(1) In July 1939, the Pure Oil Company inaugurated the program of giving to all of its employees over 65 years of age a $500.00 life insurance policy. Mr. Harvey was over 65 at that time. The premiums thereon were paid by The Pure Oil Company, without any contribution from Mr. Harvey.

"(2) The Pure Oil Company made application for such insurance, and Mr. Harvey did not join in the application.

"(3) The beneficiary was designated by Mr. Harvey.

"(4) Mr. Harvey had the right to change the beneficiary.

"(5) On policies of this kind, The Pure Oil Company continues to pay the premiums until the death of the insured, regardless of whether or not the insured remains in the employment of the company." (Stip. 28.)

### Conclusions of Law

■ A. This Court has jurisdiction of the subject matter of this action under Judicial Code, Sec. 24, as amended, and U.S.C.A. Title 28, § 41(5) (20) [now §§ 1340, 1346]. Lowe Brothers Co. v. United States, 304 U.S. 302, 304, 305, 58 S.Ct. 896, 82 L.Ed. 1362.

■ B. The order denying the motion of defendant which presented the question of venue is adhered to.

Venue involves a privilege which "may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct" and here the objection was not seasonably made and was waived. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437; Commercial Casualty Insurance Co. v. Consolidated Stone Co., 278 U.S. 177, 49 S.Ct. 98, 73 L.Ed. 252, at page 254; Freeman v. Bee Machine Company, 319 U.S. 448, 63 S. Ct. 1146, 87 L.Ed. 1509, at page 1513, and

cases cited; Industrial Addition Association v. Commissioner, 323 U.S. 310, 65 S. Ct. 289, 89 L.Ed. 260, 262, at page 263, and cases cited; Clover Leaf Freight Lines, Inc. v. Pacific Coast Wholesalers Ass'n, 7 Cir., 166 F.2d 626; Everett Ry. Light & Power Co. v. United States, D.C.Wash., 236 F. 806; Brookings State Bank v. Federal Reserve Bank, D.C., 291 F. 659; Atkins v. Bender, D.C., 18 F.2d 357.

■ C. The contributions by Mrs. Harvey to the acquisition of property which was assessed and taxed against the estate, which contributions are stated in the foregoing Finding of Facts, were from her own income, consisting of dividends on stocks, rentals from real estate, interest on bonds, and profits on resale of property.

D. The dividends on stocks, rentals from real estate, interest on bonds and profits on resale of property, which were received by Elizabeth C. Harvey when title and full ownership of such stocks, real estate, bonds and property were held by her, all as stated in the foregoing Finding of Facts, were not received or acquired by her from Arlington C. Harvey within the meaning of Sec. 811(e) of the Revenue Code.

E. This is true although Mr. Harvey contributed certain amounts to the acquisition of property which was owned by Mrs. Harvey, and this property, through successive sales and reinvestments, was transmuted into other property owned by her; and her sales at profit, and her rents, interest and dividends from the said property owned by her produced her said income. Estate of Howard v. Commissioner, 9 T.C. 1192; Estate of Frizzell v. Commissioner, 9 T.C. 979; Lawton v. Commissioner, 6 Cir., 164 F.2d 380; Rice v. Eisner, 2 Cir., 16 F.2d 358.

■ F. The Bureau of Internal Revenue has interpreted Sec. 811(e) of the Revenue Code in Sections 81.22 and 81.23 of Regulations 105, and by Amendments thereto of 1942.

Section 81.22 referring to Section 811(e) of the Internal Revenue Code states,—"It has no reference to property held by the decedent and any other person or persons as tenants in common."

The amendment of 1942 adds to Section 81.22,—"With respect to the meaning of property derived * * * from separate property of the spouse and to the identification required, see Section 81.23."

Section 81.23 as amended provides,—"Property derived originally * * * from separate property of the spouse includes property that may be identified as (1) income yielded * * * by such separate property, and (2) property clearly traceable (by reason of acquisition in exchange, or other derivation) * * * to such separate property or to such income."

The "property derived originally * * from separate property of the spouse" refers to property excepted under Sec. 811(e).

The property "jointly held" by Mr. Harvey and Mrs. Harvey "traceable * * * to such separate property, or to such income" of Mrs. Harvey is within the exception in Section 811(e) and not to be included in the gross estate of Mr. Harvey.

■ As to property held by Mr. Harvey and Mrs. Harvey as tenants in common, only one half the value thereof is to be included in the gross estate of Mr. Harvey.

G. "Income" has been defined "'as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets * * * a gain, a profit, something of exchangeable value proceeding from the property, severed from the capital, however, invested or employed, and coming in, being 'derived'—that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit or disposal—that is income derived from property." Eisner v. Macomber, 252 U.S. 189, at page 207, 40 S.Ct. 189, 193, 64 L. Ed. 521, 9 A.L.R. 1570; Chicago & N. W. R. Co. v. Commissioner, 7 Cir., 66 F.2d 61, at page 66, and cases cited.

H. In the Stipulation of Facts and the proof in this action, plaintiff, the Executrix, has traced into the property assessed by the Commissioner a large amount of funds

618

received by Mrs. Harvey as income from property separately owned by her.

 I. Certificates 24 and 25 issued by Bell Savings and Loan Association, each for $5,000 listed in the Estate Tax Return were held, one by Mrs. Harvey as trustee for Mr. Harvey, and the other by Mr. Harvey as trustee for Mrs. Harvey, under trust agreements. One of these should be included in the estate as property separately owned by Mr. Harvey, and the other should not be included in the estate property.

J. Certificates 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16 and 22 listed in the Estate Tax Return, in total amount $75,000, have no words of survivorship in the ownership or 'payable' clause in the certificates. They were payable to Mrs. Harvey or Mr. Harvey.

By reason thereof, and of Section 2 of Chapter 76, Illinois Statutes, these certificates were held by Mr. Harvey and Mrs. Harvey as tenants in common, and only half the amount of said certificates should be included in the estate, and considered as property separately owned by Mr. Harvey.

K. The farm machinery and equipment listed on Sheets E 6 (A) and E 6 (B) of the Estate Tax Return in amount $10,250 was likewise owned by Mr. Harvey and Mrs. Harvey as tenants in common.

Only half of said amount should be included in the estate, and as property separately owned by Mr. Harvey.

L. The deductions in amount of $6,119.51 are well within the amount of property included in the gross estate which is subject to claims, as found above, and should be allowed. Payment of a reasonable fee to the attorney acting for plaintiff in making the claim for refund and in prosecuting this action is an allowable deduction.

M. By recomputing the tax, with effect given to the foregoing findings and conclusions, and deducting the amounts contributed by Mrs. Harvey from her income, the net estate of Mr. Harvey for taxation is less than the statutory exemption of $60,000.

N. Plaintiff, executrix, has sustained the allegations of the complaint filed in this cause; and the deficiency in tax assessed against said estate and collected from and paid by said executrix was improper and unjustified.

O. Plaintiff is entitled to recover from the defendant the taxes and interest unlawfully collected from and paid by plaintiff.

P. The Court directs that judgment be entered in favor of plaintiff and against the defendant for the sum of $34,968.72, with interest thereon at the rate of six per centum per annum from July 29, 1946, together with her costs taxed herein.