The Estate of Daniel W. Wardwell, The Farmers National Bank and Trust Company of Rome and William W. Wardwell, Executors v. Commissioner.
Estate of Wardwell v. Commissioner
Docket No. 71537.
United States Tax Court
T.C. Memo 1961-295; 1961 Tax Ct. Memo LEXIS 54; 20 T.C.M. (CCH) 1530; T.C.M. (RIA) 61295; October 26, 1961
*54 Held, decedent's relinquishment on April 16, 1952, approximately 16 1/2 months prior to his death, of the power to alter or amend a trust established by him on January 25, 1929, was not in contemplation of death, and the corpus of the trust at the time of relinquishment is not includible in decedent's gross estate. Sections 811(c)(1)(A) and (d)(2), Internal Revenue Code of 1939. Johnson D. McMahon, Esq., American Block, Rome, N. Y., for the petitioner. A. Jesse Duke, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves a deficiency in estate tax in the amount of $22,158.51. The sole *55 issue is whether the relinquishment on April 16, 1952, of the power to alter or amend a trust established January 25, 1929, was in contemplation of death. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Daniel W. Wardwell (hereinafter referred to as the decedent) died September 3, 1953, at the age of 71. The Farmers National Bank and Trust Company of Rome and William W. Wardwell, both of Rome, New York, were appointed executors of his estate by the Surrogate's Court, Oneida County, New York, on October 6, 1953. The estate tax return was filed with the district director at Syracuse, New York. The decedent established a trust for the benefit of his mother, Mary Ella Wardwell, and his wife, Mabelle W. Wardwell, by trust agreement dated January 25, 1929, the pertinent provisions of which are as follows: THIS INDENTURE made the 25th day of January, 1929, by and between Daniel W. Wardwell, of Rome, N. Y., party of the first part, and The Farmers National Bank and Trust Company of Rome, and William W. Wardwell, both of Rome, N. Y., parties of the second part, WITNESSETH: * * *
NOW, THEREFORE, party of the first part in consideration *56 of the premises and of the sum of One Dollar ($1.00) to him in hand paid, the receipt whereof is hereby acknowledged, by parties of the second part, has assigned, transferred and delivered unto said parties of the second part, their successors, representatives or assigns, the property set forth on Schedule A hereto attached. TO HAVE AND TO HOLD the same and the income thereon unto parties of the second part, their successors, representatives or assigns, in trust nevertheless as follows: FIRST: To manage, invest and reinvest the said property without limitation to securities in which trust funds are allowed by law to be invested and to collect and receive the interest and income thereon, it being understood that any stock dividends received on any of the securities held in the trust shall constitute addition to the corpus and not to the income of the trust, and after deducting the commissions of the trustee and all proper charges incidental to the expenses of the trust all of such commissions to be received and retained by the Farmers National Bank and Trust Company of Rome, to pay from the net income 1. To pay to Mary Ella Wardwell annually on the first day of July in each year *57 for and during her life so much thereof as in the opinion of the trustees may be necessary for her proper maintenance and support. 2. To pay to Mabelle W. Wardwell all the balance of said income for and during the term of her natural life. 3. Upon the death of said Mary Ella Wardwell leaving Mabelle W. Wardwell her surviving to pay all of said income to Mabelle W. Wardwell for and during the term of her natural life. SECOND: Party of the first part may at any time and from time to time add to the principal of this trust fund by subsequent payments of cash or delivery of securities to be held upon the trust herein declared. * * * FOURTH. Upon the death of Mabelle W. Wardwell or if she shall have died before Mary Ella Wardwell then upon the death of Mary Ella Wardwell the parties of the second part shall transfer and deliver all of said trust fund both principal and interest then remaining in their hands after making deduction for their fees, commissions and expenses as herein provided, to the five children of the party of the first part, William W. Wardwell, James F. Wardwell, Elizabeth Wardwell, Daniel W. Wardwell, Jr. and Edward A. Wardwell, or their survivors, and the *58 lawful issue of any deceased child, equally, share and share alike, per stirpes and not per capita. FIFTH: Notwithstanding anything herein contained party of the first part may, from time to time, during the continuance of this trust, by an instrument in writing executed and acknowledged in the manner required for a deed of real property so as to enable it to be recorded in the State of New York and delivered to the Trustees, modify or alter except as to repossession of the trust funds, this indenture and the trusts then existing, and the estate and interests in property hereby created, and in case of such modification said instrument shall direct the disposition to be made of the trust fund, or of the portion thereof affected by such modification, and the Trustees shall make, execute and deliver such instruments, if any, and make such conveyances and transfers of property as may be necessary or proper in order to carry the same into effect, and no one shall have any right, interest or estate under this indenture except subject to such proper modification or alteration thereof. The dates of birth of the five children are as follows: William W. Wardwell, December 15, 1907 James *59 F. Wardwell, November 21, 1909 Elizabeth Wardwell, September 30, 1911 D. W. Wardwell, Jr., March 6, 1915 Edward A. Wardwell, July 20, 1917 Decedent amended said trust agreement on April 16, 1952, relinquishing his right to alter or amend as follows: WHEREAS, I heretofore on the 25th day of January, 1929, executed a Trust Indenture under which I deposited certain securities and property in trust with The Farmers National Bank and Trust Company of Rome and William W. Wardwell, as Trustees, and WHEREAS, I made an amendment to the said Trust Indenture on the 25th day of May, 1944, and WHEREAS, under the terms of said Indenture and amendment I retained the right to direct and control investment of the Trust Fund, also the right to alter and amend the said Trust Indenture in certain respects, and WHEREAS under the terms of the said Indenture the said trust fund or portions thereof might revert to me or to my estate, and WHEREAS, it is my desire and intent to divest myself completely from any and all right, title and interest in and to the said fund and property and from all control and power over management and disposition of the said trust fund, now IN CONSIDERATION *60 OF $1.00 and OTHER GOOD AND VALUABLE CONSIDERATION, I hereby waive any restriction regarding my control or direction of investment by the trustees and I authorize the trustees to make investments in their own discretion and without my approval. I also waive my rights to alter or amend the said Indenture hereafter. I also waive any rights to reversion of any part of said trust fund and direct that any portions of said fund which may revert to me or to my estate under said Indenture shall be paid and transferred to the Young Men's Christian Association of Rome, New York, or if it shall not be in existence to another institution carrying on similar work to be selected by the trustees or if there be no such institution in existence then to the United States of America. The value of the trust as of April 16, 1952, was $62,679.03. At the time the amendment to the trust agreement was made on April 16, 1952, the decedent was in good health and active in business. The original trust agreement was drafted by decedent's attorney, Johnson D. McMahon, to provide successively an independent income for decedent's mother and wife. At the time it was drafted in 1929, McMahon discussed with *61 decedent whether the trust would be subject to tax. McMahon advised decedent an irrevocable trust was free of tax and that use of the phrase excluding any right of repossession of the trust funds by decedent made this trust such that the corpus would not be included in his estate. Later, in 1952, McMahon advised decedent that "as the regulations had changed" the corpus might be includible in his estate upon his death unless the right to alter or amend was relinquished. Decedent told his attorney he thought the trust as it then existed was free from tax, but, if there was any question, he "wanted the situation as it existed, or as he thought it existed, to be continued," and asked him to prepare the necessary amendment. The amendment of April 16, 1952, resulted from this advice and suggestion of decedent's attorney. Decedent frequently discussed his business and personal affairs with his son William W. Wardwell, Jr. He told his son the trust which he had established was tax free and that if anything happened to him, his (the son's) mother would be well taken care of. He also told his son he had amended the trust upon the advice of Johnson McMahon "to agree with some new law so that *62 it will remain tax free." Mary Ella Wardwell died on November 14, 1936, and Mabelle W. Wardwell died on November 19, 1952. Upon the death of the last life income beneficiary the trust terminated and the trust property was distributed to the remaindermen, prior to decedent's death. The estate tax return filed for decedent's estate reported gross income in the amount of $265,008.80, on which net estate tax in the amount of $43,724.11 was paid. Neither the execution of this original trust agreement on January 25, 1929, nor the relinquishment of the power to alter or amend it on April 16, 1952, was done in contemplation of death. Opinion Respondent determined that the corpus of a trust established by the decedent on January 25, 1929, was includible in his gross estate under the provisions of sections 811(c)(1)(A) and 811(d)(2) of the 1939 Code [1] by virtue of decedent's relinquishment on April 16, 1952, approximately 16 1/2 months prior to his death, of the power to alter and amend the said trust and the statutory presumption provisions contained in section 811(1). [2]
*63 Petitioner contends that the trust was not originally created in contemplation of death, that until 1952 the decedent believed the transfer was complete as of 1929, and that decedent's relinquishment of his power to amend was motivated by the desire to complete the transaction as it was originally intended in 1929. Respondent does not contend that decedent's relinquishment was motivated by any apprehension or premonition of death. In fact, the parties stipulated, and we have so found, that at the time of decedent's relinquishment he was "in good health and active in business." Respondent's contention is that decedent's sole or dominant motive in relinquishing his power to alter or amend was the avoidance of estate taxes and therefore was in contemplation of death. The issue is thus narrowed to whether the "death" motive (the desire to avoid estate taxes) or the "life" motive (the desire to effectuate and complete the establishment of an independent income for his wife free from tax) predominated in decedent's relinquishment of his power to alter or amend the trust. The question is one of fact to be determined from all the evidence. See United States v. Wells, 283 U.S. 102 (1930); *64 Allen v. Trust Co. of Georgia, 326 U.S. 630 (1946). It has been held that where decedent's sole or dominant motive in making a transfer is the desire to avoid estate taxes to which the property transferred would otherwise be subject at his death, such transfer is made in contemplation of death. See Vanderlip v. Commissioner, 155 F. 2d 152 (C.A. 2, 1946), affirming 3 T.C. 358; First Trust and Deposit Co. v. Shaughnessy, 134 F. 2d 940 (C.A. 2, 1943), certiorari denied 320 U.S. 744 (1943). Where, however, relinquishment of a retained power to amend is only a part of an integrated transaction, i.e., merely an additional step to accomplish a "life" purpose associated with a previously established trust, then such relinquishment is not in contemplation of death. Allen v. Trust Co. of Georgia, supra.The transfer of property for the purpose of establishing an independent competence or income for the wife or children of a decedent has been held to be a "life" purpose and not made in contemplation of death. Constance McCormick, Executrix, 38 B.T.A. 308, 312; McGregor v. Commissioner, 82 F. 2d 948 *65 (C.A. 1, 1936); Estate of Ralph Owen Howard, 9 T.C. 1192, 1199-1201. In the Allen v. Trust Co. case decedent in 1925 established spendthrift trusts to meet the necessities of his children by giving them property, freed of all claims, tax or otherwise, and in 1937, a year before his death, released his retained power to amend the trusts. The District Court (the Circuit Court of Appeals concurring) found that the decedent released the power to amend the trusts in order to accomplish the purpose which he originally had, but later discovered had not been achieved because of a misunderstanding of the law. The Supreme Court held that such findings were sufficient to overcome the statutory presumption that the gifts, being made within 2 [now 3] years of the decedent's death, were made in contemplation of death. The Court further held that the fact that the release of the power to amend was admittedly for the purpose of avoiding paying an estate tax on the property included under the trusts, did not establish that such release was "in contemplation of death" so as to require inclusion of the trust property in the decedent's taxable gross estate; that his desire to make adequate *66 provision for his children "remained the dominant motive, or so the triers of fact could properly find." The instant case is substantially on all fours with the Allen v. Trust Co. case. Here, as there, decedent's relinquishment of his power to alter or amend was merely a step in an integrated transaction, intended to complete what he thought he had originally accomplished in 1929. The desire to avoid taxes was merely incidental. The trust as originally established, was intended to provide successively independent incomes for decedent's mother and wife. Enjoyment thereof was not made dependent upon decedent's death. Upon the death of both his mother and his wife, the trust was to terminate and the trust property be distributed to his children or their descendants. This likewise was not dependent upon decedent's death. In fact both his mother and wife predeceased decedent, the trust was terminated and the trust property was distributed to decedent's children prior to his death. Decedent had no interest whatever in the property at the time of his death. But for the release of his retained power to alter or amend, within 3 years of his death, the present question would not have arisen. *67 The desire to assure what he thought had been accomplished by the original transfer in 1929, namely an independent income for his wife (his mother having previously died), brought about the present situation and the release of his retained power to amend within 3 years preceding his death brought into play the presumptive provisions of section 811(1). The presumption that the release was made in contemplation of death is overcome, however, by the evidence that the real purpose for the release was to make certain that which decedent thought had been accomplished at the time of the original transfer in 1929. The desire to provide an independent income for his wife remained decedent's dominant motive at the time of the release. See also State Street Trust Co. v. United States, 160 F. Supp. 877 (D.C.Mass., 1958), and Estate of Ralph Owen Howard, supra. Although not cited or relied upon by either party, it may be appropriate to point out that the case of Estate of Mary Lois K. McIntosh, 25 T.C. 794, is distinguishable. In that case, while holding that the decedent was trying to do in 1943 what she intended to do in 1941, we held that the value *68 of the trust in question was includible in her gross estate for the reason that "her intention in the latter year was simply to save estate taxes." We hold that the corpus of the trust is not includible in decedent's gross estate under the provisions of section 811(c)(1)(A) and (d)(2), Internal Revenue Code of 1939. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * *
(c) Transfers in Contemplation of, or Taking Effect At, Death. - (1) General rule. - To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise - (A) in contemplation of his death; * * *
(d) Revocable Transfers. - * * *
(2) Transfers on or prior to June 22, 1936. - To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph; ↩
2. SEC. 811. GROSS ESTATE. * * *
(1) Contemplation of Death. - If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of subsections (c), (d), and (f); but no such transfer, relinquishment, exercise, or release made prior to such three-year period shall be deemed or held to have been made in contemplation of death.↩